CHARLES S. BOND ET AL. *v.* GEORGE S. BENNING ET AL.

COTTER, C. J., LOISELLE, BOGDANSKI, LONGO and SPEZIALE, Js.

Argued March 7—decision released June 27, 1978

*Helen F. Krause,* for the appellants (defendants George S. Benning and Helen E. Benning).

*Robert R. Sheldon,* with whom, on the brief, was *T. Paul Tremont,* for the appellees (plaintiffs).

LOISELLE, J.  The plaintiffs brought this action for an injunction and to quiet title to land located in the town of Monroe.  By counterclaim the defend-

ants George S. and Helen E. Benning, hereinafter the defendants, sought similar relief. The court concluded that record title to the disputed parcel of land was in the plaintiffs and further, that even in the absence of record title, the plaintiffs had established title by adverse possession. From a judgment accordingly rendered, the defendants have appealed.

The defendants have assigned error in the court's refusal to find those facts set forth in thirty-nine paragraphs of their draft finding which are claimed to be admitted or undisputed. A review of the evidence presented in the appendix to the plaintiffs' brief indicates that the additions which the defendants seek include facts which are implicit in the finding, or are not material, admitted or undisputed. The defendants next assign error to fifty-four paragraphs in the court's finding, asserting that the facts found are unsupported by the evidence. This wholesale attack gains nothing. It tends to cloud the issues, and of itself, casts doubts on the defendants' claims. *Scribner* v. *O'Brien, Inc.*, 169 Conn. 389, 391, 363 A.2d 160. In any event, the evidence printed in the appendix to the plaintiffs' brief indicates adequate support for the challenged findings. Consequently, this claim is equally without merit. *Yale University* v. *New Haven*, 169 Conn. 454, 464, 363 A.2d 1108.

The court's finding reveals the following facts: The plaintiffs, all of whom were related by blood or marriage to Nellie N. Bond, the daughter of Turney Northrop, their predecessor in title, acquired title in 1971 and 1973 to twenty-two acres of land, more or less, in the town of Monroe, by two separate certificates of descent. Nellie N. Bond acquired title to

the same twenty-two acres of land, more or less, by quitclaim deed dated June 29, 1944, from her father Turney Northrop. The plaintiffs' record chain of title dates back to 1828, at which time the property consisted of approximately ten acres. Over the years, various parcels of land were acquired by deeds, until by 1916, when the land was acquired by Turney Northrop, the deed described land containing twenty-two acres, more or less. This description of the land claimed by the plaintiffs has remained constant in all the deeds in the chain of title since 1914.

The defendants acquired their property in 1974, the deed describing the land as containing three acres, more or less. The land had been owned by Nellie Burr, who had lived on the parcel since 1910. In 1936 she acquired a deed to the property from Lester Burr.

The disputed parcel of land consists of a triangle of approximately 1.34 acres located to the west of the westerly stone wall located on the defendants' property and running about to a break in the southerly stone wall on the plaintiffs' property. Prior to the defendants' purchase of the property, no previous owner had claimed ownership of this land. Nellie Burr claimed only that she owned the land on which her house was situated and that area around the stone wall fences. Lester Burr, who had lived on the property his whole life, always referred to the property beyond the westerly stone wall as "Turney's Woods," referring, presumably, to his neighbor, the plaintiffs' predecessor in title, Turney Northrop. The plaintiff Charles S. Bond saw his father-in-law, Turney Northrop, go into the now disputed parcel with his horse to pick up dead trees

and ice-covered limbs in the winter; in the spring, Northrop would check the barbed wire fence which ran along the top of the stone wall. Access into the walled-in area was then, as now, through a break in the stone wall located on the Bond property.

Both parties submitted into evidence the testimony of surveyors. The defendants' surveyor failed to search back the title to determine the source of the Benning parcel. The plaintiffs' surveyor searched title back as far as the mid-1850s, also inspecting the deeds of adjoining neighbors. On the basis of his search of the deeds, maps of record, assessor's information, his inspection of the property, the field work and calculations done by his associates and his own experience as a registered surveyor, the plaintiffs' surveyor determined that the disputed portion of land was within the plaintiffs' boundaries.

On the basis of this evidence, the court concluded that the plaintiffs had established ownership by record title to the disputed 1.34 acres. The court further concluded that even were record title not established, the plaintiffs had established title to the property by adverse possession.

The defendants claim that the descriptions in the deeds put in evidence by the plaintiffs are vague and do not define the boundary line between the parties' properties with sufficient accuracy to support the court's conclusion that the disputed area was within the plaintiffs' property. The thrust of the defendants' claim appears to be that no evidence was submitted to tie in the disparate deeds allegedly adding acreage to the original ten-acre parcel with the twenty-two acres described in the plaintiffs' deeds. The claim is without merit.

The proper way to prove title is to submit into evidence original documents or, as did the plaintiffs in this case, certified copies from the records. *Curtin v. Franchetti,* 156 Conn. 387, 389, 242 A.2d 725; *New Canaan Country School, Inc. v. Rayward,* 144 Conn. 637, 640, 136 A.2d 742. The deeds in question adequately reveal that from 1828, when the original ten acres were acquired by the plaintiffs' predecessor in title, until 1914, several plots were added on to the original acreage making the full area about twenty-two acres. That acreage fairly coincides with the area found by the plaintiffs' surveyor to be within their boundaries. Any discrepancy between the actual measurement of 21.287 acres made by the surveyor and the twenty-two acres "more or less" designated in the deeds can be, as the court found, explained by the fact that many old deeds contain imprecise measurements.

Furthermore, the court relied heavily for its conclusion on the testimony of the plaintiffs' surveyor, who explicitly stated that "[t]he boundaries and descriptions set forth in . . . [the deeds placed in evidence] all refer to the same property." Crediting this statement, the court found that "[t]he deeds relied upon by the plaintiffs as the basis for their claims by record title all describe the same property."

Where a surveyor, whose qualifications are accepted by the court, has made a map showing the sum of various acquisitions based upon an examination of the chain of title of all the parties affected, a review of the maps of record and information in the town records, an inspection of the property in question, field work and calculations, his testimony

may be accepted as that of an expert. His opinion "requires not merely a knowledge of the principles and practices of conveyancing as far as they enter into the interpretation of deeds, but also the power to compare and coordinate various descriptions of the land in question and of other adjacent lands and to fit together the boundaries, monuments and other indicia of location so as to apply the terms of the deeds to the actual ground as represented upon a properly authenticated map. Such a function is so much a matter of special training and experience as to fall within the proper range of expert knowledge." *Byard* v. *Hoelscher*, 112 Conn. 5, 9, 151 A. 351. The opinion of an expert is not binding upon the court. *Rushchak* v. *West Haven*, 167 Conn. 564, 572, 356 A.2d 104. It is, however, within the court's province to determine the credence to be given the expert's testimony and to properly weigh it in relation to the other circumstances in evidence bearing on the question in issue. *Montanaro* v. *Hartford*, 165 Conn. 57, 59, 327 A.2d 571; *Moss* v. *New Haven Redevelopment Agency*, 146 Conn. 421, 425, 151 A.2d 693.

Upon the evidence presented, the court was not in error in its conclusion that the plaintiffs had established their ownership of the land in question by record title.

The defendants further challenge the court's conclusion that, even without record title, the plaintiffs established title to the disputed parcel by adverse possession. Because of our determination that the court did not err in concluding that the plaintiffs had established record title to the disputed property, we need not address this claim. On appeal to this

court, the defendants have not pursued their assignments of error with respect to their own claim of adverse possession. Consequently, the court's conclusion that "[t]itle is quieted in the plaintiffs, as their respective interests may appear, against any adverse claims of any of the defendants herein" must stand.

The defendants claim finally that error exists on the face of the record because two of the defendants, People's Savings Bank of Bridgeport and the Monroe Bank and Trust Company, did not file proper pleadings, pursuant to General Statutes § 47-31, which requires that each defendant in an action to quiet title state in his answer the nature and extent of the interest claimed in the disputed property.

As conceded by the defendants the "interests" of the defendant banks are a first and second mortgage on the defendants' property. The general rule is that a person or entity which takes a mortgage on property admits, by so doing, the title of the mortgagor and is estopped from contesting the mortgagor's title. 55 Am. Jur. 2d, Mortgages, § 241. For all practical purposes, in the present case, the interest of the defendant banks was essentially identical to the interest of the other defendants. Consequently, the failure of the banks to plead in compliance with General Statutes § 47-31—a failure raised only on appeal—was in no way detrimental to any of the parties. On the contrary, the pleadings adequately raised the issues of law determinative of any conflicting claims which the parties had respecting title to the disputed parcel of land. See *Orentlicherman* v. *Matarese,* 99 Conn. 122, 128, 121 A. 275. The court's judgment effectively determined the rights of all of the parties, including those of the banks,

and no prejudice can now be said to have accrued to the defendants. The remaining claims are totally without merit.

There is no error.

In this opinion the other judges concurred.