FREDERICK C. DEVITA *v.* PASQUALE F. ESPOSITO, JR.,
ADMINISTRATOR (ESTATES OF PASQUALE F.
ESPOSITO, SR., ET AL.)
(5651)

DUPONT, C. J., BIELUCH and NORCOTT, Js.

Argued September 29—decision released December 29, 1987

*Thomas E. Crosby,* for the appellant (plaintiff).

*David M. Reilly,* for the appellee (defendant).

DUPONT, C. J. This is an action to quiet title to a three and one-half acre parcel of land, which is surrounded in part by land owned by the plaintiff and in part by land owned by the defendant's decedents. The defendant is the administrator of the estates of his deceased parents. The plaintiff's revised complaint alleged that he had record title.[1] The trial court found that the plaintiff had not proven ownership of the property by record title and, accordingly, rendered judgment for the defendant on the plaintiff's complaint. The defendant's two count counterclaim alleged record title and title by adverse possession. The trial court found that the defendant's decedents had record title to the land in question and found further that they had acquired the land by adverse possession. It rendered judgment for the defendant on both counts of his counterclaim.

On appeal, the plaintiff claims that the trial court erred (1) in failing to comply with the provisions of General Statutes § 47-31 in its determination of record title, (2) in concluding that the defendant had sufficiently shown all the elements necessary to find adverse possession, (3) in rendering an inconsistent judgment of record title and title by adverse possession, and (4) in admitting certain hearsay statements. We find error.

I

The defendant argues, as a preliminary matter, that the plaintiff's claims based upon the application of General Statutes § 47-31[2] are barred from appellate review

---

[1] A second count of the plaintiff's revised complaint alleged title by adverse possession. That count was withdrawn.

[2] General Statutes § 47-31 provides in pertinent part: "ACTION TO SETTLE TITLE OR CLAIM INTEREST IN REAL OR PERSONAL PROPERTY. (a) An action may be brought by any person claiming title to, or any interest in, real or personal property, or both, against any person who may claim to own the property, or any part of it, or to have any estate in it, either in fee, for years, for life or in reversion or remainder, or to have any interest in the property, or any lien or encumbrance on it, adverse to the plaintiff,

because the plaintiff failed to raise these claims in the trial court. In support of his argument, the defendant emphasizes the fact that the plaintiff did not specifically plead the application of the statute in his complaint, as required by Practice Book § 109A.[3] *Gionfriddo* v. *Avis Rent A Car System, Inc.*, 192 Conn. 280, 472 A.2d 306 (1984). In that case, the parties and the trial court characterized the plaintiff's claims at trial as arising under the wrongful death statute. On appeal, the plaintiff argued that he had intended to rely instead upon the survival of actions statute. The court concluded that the plaintiff's argument came "too late" and noted further that "the confusion about the basis for the plaintiff's cause of action could have been avoided had the complaint stated, as Practice Book § 109A requires, the statute upon which the complaint relied." *Gionfriddo* v. *Avis Rent A Car System, Inc.*, supra, 290–91 n.10.

There is, however, a significant difference between the quiet title action involved here and the action involved in *Gionfriddo*. In all actions to quiet title, there is a single statute, General Statutes § 47-31, which is

or against any person in whom the land records disclose any interest, lien, claim or title conflicting with the plaintiff's claim, title or interest, for the purpose of determining such adverse estate, interest or claim and to clear up all doubts and disputes and to quiet and settle the title to the property. Such action may be brought whether or not the plaintiff is entitled to the immediate or exclusive possession of the property. . . . (d) Each defendant shall, in his answer, state whether or not he claims any estate or interest in, or encumbrance on, the property, or any part of it, and, if so, the nature and extent of the estate, interest or encumbrance which he claims, and he shall set out the manner in which the estate, interest or encumbrance is claimed to be derived. . . . (f) The court shall hear the several claims and determine the rights of the parties, whether derived from deeds, wills or other instruments or sources of title, and may determine the construction of the same, and render judgment determining the questions and disputes and quieting and settling the title to the property."

[3] Practice Book § 109A provides: "When any claim made in a complaint, cross complaint, special defense, or other pleading is grounded on a statute, the statute shall be specifically identified by its number."

applicable to a plaintiff's claims; *Brill* v. *Ulrey,* 159 Conn. 371, 372–74, 269 A.2d 262 (1970); and which, in fact, supersedes any common law actions brought to determine record title or to claim any interest in real property. Id. As a result, there can be no confusion about the basis for the plaintiff's cause of action, and there can be no doubt that General Statutes § 47-31 served as the basis for the plaintiff's action to quiet title.

Also, the relief afforded by the action to quiet title is a full determination of the rights of the parties in the land. *Lake Garda Improvement Assn.* v. *Battistoni,* 155 Conn. 287, 293, 231 A.2d 276 (1967). Therefore, despite the plaintiff's failure to plead § 47-31 of the General Statutes, the defendant was given clear notice by the allegations as stated in the complaint and by the relief requested in it, that the plaintiff's suit was an action to quiet title to the land in question. Moreover, the defendant admitted at oral argument that at all times throughout the proceedings he was aware that the action was one to quiet title.

We conclude that when the plaintiff filed his complaint seeking a judgment settling the title to the land in dispute, he invoked the remedy provided in General Statutes § 47-31. See *Foote* v. *Brown,* 78 Conn. 369, 377, 62 A. 667 (1905) (referring to then General Statutes § 4053, which is now § 47-31 of the General Statutes). In *Rowe* v. *Godou,* 12 Conn. App. 538, 542, 532 A.2d 978 (1987), this court held that "the requirement of Practice Book § 109A is directory, rather than mandatory." As a result, the plaintiff's failure to plead specifically the statute will not, in this case, bar his claims under § 47-31 from effective appellate review.

## II

We next address the plaintiff's claim that the trial court's judgment for the defendant on counts one and

two of his counterclaim must be set aside as inconsistent.[4]

The defendant argues that the plaintiff may not now complain of the trial court's judgment for the defendant on both counts since the plaintiff did not move to strike either count of the counterclaim on the ground of inconsistency nor did he make a motion to compel an election by the defendant at trial. The defendant's argument is flawed, however, because of our liberal rules of practice. Even if either motion had been made, the plaintiff would not have succeeded in having either of them granted. At common law, pleadings had to be direct and certain and, therefore, alternative allegations in a single pleading were not allowed. In Connecticut, however, a party may plead in the alternative, both sets of allegations appearing in the same pleading. Under Practice Book §§ 94 and 137, a plaintiff is allowed to advance alternative and even inconsistent theories of liability against one or more defendants in a single complaint. *Dreier* v. *Upjohn Co.,* 196 Conn. 242, 245, 492 A.2d 164 (1985). Similarly, a defendant may advance alternative and even inconsistent theories of liability against the plaintiff in a counterclaim made pursuant to Practice Book § 116.

While alternative and inconsistent pleading is permitted, there is a limitation of good faith upon its use. Case law suggests that alternative pleading is justified only when the pleader does not know all the facts necessary to make an election. *Dreier* v. *Upjohn Co.,* supra, 246. In the present case, although the defendant had only a single right to recover on his counterclaim, he was apparently uncertain, at the time he drafted his

---

[4] Although it is unclear from the trial court's memorandum of decision whether or not it had specifically found for the defendant on the claim of adverse possession, the judgment file, which the trial court personally signed, made it clear that the court ruled in favor of the defendant on the second count of the counterclaim as well as on the first count.

pleading and throughout the trial proceedings, as to which of two opposing sets of facts, title by deed or title by adverse possession, caused title to rest in the defendant's decedents.[5] Since the defendant could not, in good faith, determine the ultimate facts in advance, it would have been improper to require him to make an election at trial between the claim of record title and the claim of adverse possession. Id.

The defendant next argues that since there is nothing inconsistent with the claims that his decedents had record title and also had adversely possessed the property, there is nothing wrong with the trial court's ruling in favor of the defendant on both counts of the counterclaim. We disagree and hold that the judgment of title by deed and title by adverse possession is inherently inconsistent.

A person who claims title by deed is claiming that he has good record title which entitles him, in an action to quiet title, to a judgment of ownership. *Loewenberg* v. *Wallace,* 147 Conn. 689, 698, 166 A.2d 150 (1960). Conversely, a person who claims title by adverse possession is claiming that although he does not have record title, his proof of possession which is adverse, open, notorious and continuous for the entire statutory period entitles him, in an action to quiet title, to a judgment of ownership. *Ruick* v. *Twarkins,* 171 Conn. 149, 155, 367 A.2d 1380 (1976); *Schlough* v. *Ruley,* 1 Conn. App. 119, 120, 468 A.2d 1272 (1983).

---

[5] In *Dreier* v. *Upjohn Co.,* 196 Conn. 242, 246, 492 A.2d 164 (1985), our Supreme Court stated: " 'Our laws formerly cast on the plaintiff the duty of construing his rights with respect to the form in which they ought to be brought before the court, and the relief to which he might be entitled, at the risk of losing everything if he mistook his remedy. The Practice Act enables him, in a case like the present, to throw this duty of construction upon the court. It is enough for him to tell his story as plainly and concisely as may be, and to state the different kinds of relief, one of which he thinks he may fairly claim.' *Craft Refrigerating Machine Co.* v. *Quinnipiac Brewing Co.,* 63 Conn. 551, 564, 29 A. 76 (1893)."

One who has record title also has the accompanying right to possession of the property in the absence of a lease agreement with another. See *Berger* v. *Guilford,* 136 Conn. 71, 80, 68 A.2d 37 (1949). Contrary to the view expressed in the defendant's brief, one who has record title and, concomitantly also possesses the property does not thereby acquire title to the property by adverse possession. Rather, possession of property in an open and continuous manner, is a possession and a use of property which is consistent with and incident to ownership by one who has record title to the property.

A duty of construction is placed upon the trial court whenever a party pleads inconsistent theories of recovery. *Dreier* v. *Upjohn Co.,* supra, 246. Although a party may plead, in good faith, inconsistent facts and theories, a court may not award a judgment on inconsistent facts and conclusions. A judgment, read in its entirety, must admit of a consistent construction. *Riley* v. *Liquor Control Commission,* 153 Conn. 242, 245, 215 A.2d 402 (1965); *Harrison* v. *Union & New Haven Trust Co.,* 147 Conn. 435, 439, 162 A.2d 182 (1960). Where a party is entitled to only a single right to recover, it is the responsibility of the trial court to determine which of the inapposite sets of facts the party has proved, and then to render judgment accordingly.

The trial court found for the defendant on count one of the counterclaim, which means that the court must have found record title to be in the defendant's decedents. The court also found for the defendant on count two of the counterclaim, which means that the court must not have found record title to be in the defendant's decedents. As a result, the trial court's judgments on the defendant's counterclaims are inconsistent.[6]

---

[6] In *Bond* v. *Benning,* 175 Conn. 308, 398 A.2d 1158 (1978), a trial court's finding of ownership by record title was upheld in a case where the trial

Furthermore, the judgment for the defendant on the plaintiff's complaint is inconsistent with the judgment for the defendant on the second count of the counterclaim. The judgment for the defendant on the plaintiff's complaint must be based on the finding that the plaintiff did not prove, by a preponderance of the evidence, that he had record title. *Jackiw* v. *Nocera,* 33 Conn. Sup. 773, 774, 371 A.2d 1070 (1976); see generally *Clark* v. *Drska,* 1 Conn. App. 481, 485–86, 473 A.2d 325 (1984). Conversely, the judgment for the defendant on the second count of his counterclaim must be based on a finding that the plaintiff had record title and not the defendant's decedents. As this court stated in *Clark* v. *Drska,* supra: "Implicit in [the trial court's] decision . . . is that the defendant did not have record title since it found that the defendant had acquired title by adverse possession." Id., 488, citing *Arcari* v. *Dellaripa,* 164 Conn. 532, 325 A.2d 280 (1973). The trial court must first determine in which party record title lies, and then, if necessary, determine whether adverse possession has divested the record owner of his title.

### III

The defendant argues that even if the judgment on both counts of the counterclaim was inconsistent, reversible error did not occur. The defendant's argument is based upon his theory that the "general verdict rule" should apply. He claims that judgment on both counts requires that it be sustained if either count

court also concluded that even if record title had not been proven, the party held title by adverse possession. Id., 311. The trial court in the present case did not so conclude. The *Bond* court addressed only the claim of record title, which they found to be sufficiently shown. The *Bond* court also stated that it would not address the claim of title by adverse possession. Our review of the record and briefs in *Bond* indicates that the appellant did *not* make a claim that the judgment was inconsistent. The *Bond* court did not sua sponte consider the issue. We must consider the issue here, however, since the plaintiff has properly raised the issue.

is supported by the evidence. The cases upon which the defendant relies, however, are cases which were tried to a jury, not to a court. See *Goodman* v. *Metallic Ladder Mfg. Corporation,* 181 Conn. 62, 65–66, 434 A.2d 324 (1980); *Giglio* v. *Connecticut Light & Power Co.,* 180 Conn. 230, 232, 429 A.2d 486 (1980). These decisions reflect the policy of appellate courts not to "assume" that the jury subscribed to an erroneous theory of recovery where a complaint is divided into two counts. *Goodman* v. *Metallic Ladder Mfg. Corporation,* supra, 65. When a complaint is divided into several counts, appellate courts will sustain a general verdict where the jury was presented with a proper theory of recovery. *Johnson* v. *Flammia,* 169 Conn. 491, 495, 363 A.2d 1048 (1975). No such policy consideration exists, however, when the judgment is rendered by a trial court. The trial court in this case rendered a judgment specific as to each count of the defendant's counterclaim. It is, thus, known that the court relied on inconsistent theories upon which to base its judgment. This case is similar to those jury cases in which interrogatories are used and the answers indicate a basic inconsistency. Where interrogatories are submitted, the legal basis of the verdict is discernible and the consequences of the general verdict rule can be avoided. See *Goodman* v. *Metallic Ladder Mfg. Corporation,* supra, 65; *Harry A. Finman & Son, Inc.* v. *Connecticut Truck & Trailer Service Co.,* 169 Conn. 407, 411, 363 A.2d 86 (1975); Practice Book § 312.

In his brief, the defendant further argues that "the concept and principles of the general verdict are equally appropriate to this trial," because a decision by the trial court without a jury may be a "verdict," citing *Gionfriddo* v. *Avis Rent A Car System, Inc.,* 192 Conn. 301, 306, 472 A.2d 316 (1984). We disagree. In *Gionfriddo,* the trial court's determination that the proper interpretation of a state statute necessitated the

construction of the word "verdict" to include a finding by a trial court was upheld. Id., 305–306. We are not concerned here with any situation even vaguely similar to that before the *Gionfriddo* court. " 'As a general rule the term "verdict" refers to a final decision of a jury and does not relate to a finding by a court.' " Id., 306. We hold, therefore, that the general verdict rule cannot be applied to sustain inconsistent judgments rendered by a court after a trial.

There are several reasons why we must hold the trial court's rendering of the inconsistent judgments to be harmful error. Probably the most persuasive reason for finding reversible error is that the mere fact that the trial court found record title and title by adverse possession to be in the defendant's decedents, brings to our attention the fact that the trial court failed to apply General Statutes § 47-31 and the relevant interpretive case law to the facts before it. In its memorandum of decision, the trial court stated that for the same reasons for not finding the plaintiff to have record title, the defendant's decedents were found to have record title. Under General Statutes § 47-31, the party attempting to prove record title must prevail on the strength of his own title and not upon the weaknesses of his adversary. *Pepe* v. *Aceto,* 119 Conn. 282, 288, 175 A. 775 (1934). The memorandum of decision merely recites that record title is in the defendant "for the reasons that I have already given." Such reasons cannot form both the basis for finding against the plaintiff on his complaint and in favor of the defendant on the first count of the counterclaim.

Also, the lack of finding of subordinate facts which will support a claim of record title in the defendant's decedents is contrary to the mandate of General Statutes § 47-31 (f) that the court "shall . . . render judgment determining the questions and disputes and

quieting and settling the title to the property." Our Supreme Court in *Faiola* v. *Faiola,* 156 Conn. 12, 14, 238 A.2d 405 (1968) interpreted subsection (f) of § 47-31 to require the court to make a detailed finding which gives support to its judgment. "Since the finding [for the defendant on record title] failed to set out any such subordinate facts, such a conclusion concerning actual title [cannot stand]." *Loewenberg* v. *Wallace,* supra, 695.

Furthermore, the trial court did not find that the defendant's decedents had adversely possessed the property by "clear and convincing evidence." *Sands Associates* v. *Kios,* 6 Conn. App. 84, 503 A.2d 179 (1986). There also was no evidence that the defendant's decedents had continuously possessed the property for any uninterrupted fifteen-year period, nor any evidence that they had occupied the entire parcel of the property. Such proof is necessary. *Roche* v. *Fairfield,* 186 Conn. 490, 442 A.2d 911 (1982). Therefore, the evidence as to the circumstances and conduct of the parties falls short of a standard required by our courts for adverse possession. The trial court's conclusion of adverse possession violates the law and cannot stand. See *Boland* v. *Catalano,* 202 Conn. 333, 337, 521 A.2d 142 (1987); *Delfino* v. *Vealencis,* 181 Conn. 533, 543, 436 A.2d 27 (1980).

Where a decision ignores a clearly applicable statute, as it does here, it is contrary to the law and cannot stand. *Hartford Federal Savings & Loan Assn.* v. *Tucker,* 181 Conn. 607, 609, 436 A.2d 1259, cert. denied, 449 U.S. 956, 101 S. Ct. 363, 66 L. Ed. 2d 221 (1980); *Pelletier* v. *White,* 33 Conn. Sup. 769, 772, 371 A.2d 1068 (1976). Moreover, the erroneous failure to apply relevant law was material to the case. See *Johnson* v. *Zoning Board of Appeals,* 156 Conn. 622, 624, 238 A.2d 413 (1968).

As a result of the inconsistent judgments rendered by the trial court, and the failure to apply the law properly, we must vacate the entire judgment of the court below and remand for a new trial. See *New Haven* v. *Public Utilities Commission,* 165 Conn. 687, 717, 345 A.2d 563 (1974); *Buckley* v. *Webb,* 143 Conn. 309, 315, 122 A.2d 220 (1956).

## IV

Although a new trial is necessary, we will discuss the evidentiary issue of the admission of claimed hearsay statements because it is likely to arise at the new trial. *State* v. *Vinal,* 198 Conn. 644, 652–53, 504 A.2d 1364 (1986).

The plaintiff claims that the trial court erred in admitting four hearsay statements into evidence. The hearsay statements objected to were: (1) the testimony of Robert Esposito that his father, Pasquale Esposito, Sr., now deceased, showed him the boundaries of the property when Robert Esposito was a boy; (2) the testimony of Robert Esposito that his father and mother told him of the historical use of the travelway which led to a barway in a stonewall; (3) the further testimony of Robert Esposito as to what his father told him of the use of land to the north of the stonewall; and (4) the testimony of Pasquale Esposito, Jr., and Robert Esposito that their father told them that the plaintiff and a third person came to the premises approximately thirty years ago and asked if they could buy "that triangle to straighten their boundary out." The plaintiff argues that under General Statutes § 52-172 and interpretive case law, these statements were inadmissible. We agree.

General Statutes § 52-172 governs the admissibility of a deceased party's statements. Section 52-172 provides in pertinent part: "In actions by or against the representatives of deceased persons . . . declarations

of the deceased, relevant to the matter in issue, may be received as evidence." In *Putnam, Coffin & Burr, Inc.* v. *Halpern,* 154 Conn. 507, 514, 227 A.2d 83 (1967), our Supreme Court clarified the admissibility of declarations concerning land boundaries with reference to § 52-172. The *Halpern* court reaffirmed the controlling factors, stating: " 'Declarations as to the location of ancient boundaries are hearsay, and are not admissible in evidence unless it appears (1) that the declarant is dead, (2) that he would be qualified as a witness to testify if present, and especially that he had peculiar means of knowing the boundary, (3) that the statement was made before the controversy in suit arose, and (4) that he had no interest to misrepresent the truth in making the declaration.' *Mentz* v. *Greenwich,* 118 Conn. 137, 144, 171 A. 10 [1934]; *Borden* v. *Westport,* 105 Conn. 139, 149, 134 A. 803 [1926]; *Turgeon* v. *Woodward,* 83 Conn. 537, 541, 78 A. 577 [1910]." *Putnam, Coffin & Burr, Inc.* v. *Halpern,* supra.

Although the first three factors are present here, the fourth factor concerning lack of interest in misrepresenting the truth is not present. " 'By "no interest to misrepresent" is meant freedom from selfish motive or self-interest, or personal advantage; disinterested not merely in the sense of having no pecuniary interest, but in the broader sense of being absolutely impartial and indifferent to the controversy on trial. . . . From earliest times we have excluded the declaration of the deceased owner of land as to his own boundary, for the reason that he was interested, and so the source of his title would forbid confidence to be placed in it. . . . For like reason, we have held similar declarations of one from whom the claimant derives title, to be inadmissible.' *Turgeon* v. *Woodward,* supra, 542." *Putnam, Coffin & Burr, Inc.* v. *Halpern,* supra. Each of the statements of Pasquale Esposito, Sr., deceased, to his sons Robert Esposito and Pasquale

Esposito, Jr., were tainted by his "interest to misrepresent the truth in making the declaration." The requisite disinterest to misrepresent the truth of the deceased declarant did not exist and, therefore, it was error for the trial court to admit the hearsay statements objected to by the plaintiff. The court, in concluding that the plaintiff did not have record title may have relied, at least in part, on the erroneously admitted testimony. We cannot determine whether the trial court would have reached the same result without this evidence. The ruling was unquestionably harmful. *Putnam, Coffin & Burr, Inc.* v. *Halpern,* supra, 516–17.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred.