[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The above couple were married on August 31, 1980 at Worchester, Massachusetts. There are two children issue of the marriage, to wit:
 a. Justin Gregory, born December 6, 1983; b. Sarah Gregory, born March 16, 1986.
The couple moved to Connecticut in 1983 at which time the real estate at 48 Birch Terrace was acquired as a family home. Both have resided in Connecticut since the move.
The wife had been a financial counselor in Massachusetts prior to the move and was earning $20,000.00 per year gross. The husband, at the time of the move and to the present time, was employed as a project engineer by Northeast Utilities. He continues in that same employment and grosses approximately $50,000.00 per year with a take home pay of about $700.00/week, depending on overtime. The wife, having stayed home to raise the children, has become employed as a financial counselor at Coastal Savings Bank with a net income of about $250. per week.
When the couple moved to Connecticut, they left behind their respective familial ties. Such ties were renewed by visits to Massachusetts, but the couple had few friends or acquaintances in Connecticut. Essentially, the husband was working long hours and the wife was occupied with caring for Justin and later for Sarah. In 1985 they did develop a friendship with another couple, John and Patricia Godinez, with whom they shared picnics and home dinners.
The wife has complained that the husband was working long hours when Justin was small and Justin had a physical feeding problem which required her attention. She felt she was not getting support from her husband, who was working long hours at his job. These tensions led to a decline in mutual affection and to a cessation in sexual relations toward the end of 1987. Meanwhile, the wife turned more to Mr. Godinez, and friendship opened into a budding relationship at the same time. The wife in 1987 was also concerned about the health of her foster father and visited him in Massachusetts. CT Page 2857
Commencing in January, 1988, the wife and Mr. Godinez took up jogging together and continued to spend more time with each other. The plaintiff was aware that the Godinez marriage was in trouble. By May 1, 1988, Mr. Godinez had moved out of his home and divorce papers were served shortly thereafter. A decree of dissolution was entered in the Godinez marriage in September, 1989.
During the early months of 1988 the relationship between the wife and husband deteriorated further with the husband suspecting that she was having a liaison with Mr. Godinez. The husband moved out of the marital home in June, 1988 when he was served with divorce papers.
It is clear to the Court that the marriage has suffered an irretrievable breakdown and that there is no hope of reconciliation. It is also clear that there is fault on both sides. The husband, perhaps driven by a desire to get ahead, failed to provide the affection and support needed by the wife. Conversely, in such a situation, the wife was not loath to accept the attentions of the all-too-willing Mr. Godinez, whose own marriage was in a state of deterioration. Accordingly, a decree of dissolution may enter.
The Court has considered the other matters raised in the complaint as to custody and visitation, support, alimony, and property division, as well as the statutes pertaining thereto. Accordingly, the Court will enter the orders hereinafter set forth.
The Court will enter orders as to the further relief claimed by the parties after taking into consideration the appropriate provisions of sections 46b-40 through 46b-87 of the General Statutes.
It is clear that primary issues in this matter are the custody, primary residence and visitation as to the two children, Justin and Sarah.
The Court finds that both parents have agreed to an award of joint custody, and an order may enter accordingly. Section 46b-56a, Connecticut General Statutes. The parties are at issue on the matter of physical custody.
On this issue the Court heard testimony from the parties: Symphonie Sanchez, Justin's preschool teacher; and two witnesses offered by the plaintiff with reference to input to a family services report. The Court also received testimony and a report from Robert D. Meier, Ph.D., a licensed psychologist, who performed an evaluation on the issue of CT Page 2858 custody at the referral of the Family Relations Division of this Court. There was also a report filed by the Family Services Unit of this Court with testimony thereon from Maret DiGangi.
The Court has considered the requirements of section 46b-56 in entering an order for physical custody, and in particular the matter of present best interests of the child. The Court has also considered its obligations as delineated by our Supreme Court in such cases as Yontef v. Yontef, 185 Conn. 275,278-283 and Cappetta v. Cappetta, 196 Conn. 10, 16. The latter case refers to "the child's interest in sustained growth, development, well being and in the continuity and stability of its environment." p. 16.
Referring first to Dr. Meier's report, the Court first notes that evaluation took place about a year prior to the trial of this case and that the report was filed six months prior to this hearing. In his report Dr. Meier found that the father would be the preferable parent for physical custody of the children. He found that neither parent had any serious emotional problem, but that the father showed greater concern for the children and particularly had greater empathy to the needs of Justin. The methodology was to address the reaction of the respective children to the respective parents, while observing the parents, and not to assess total family interaction. On the stand Dr. Meier confirmed his findings as his present opinion that the father would be the preferred physical guardian. He expressed concern that the mother had been reluctant to disclose her relationship with Mr. Godinez. This factor, when considered with an aspect of self indulgence that he found in her profile, led him to find a tendency on the part of the mother to place her relationship with Mr. Godinez above the future best interests of the children. Our Supreme Court has noted, "Psychological testimony from professionals is rightly accorded great weight." In Re Juvenile Appeal (Anonymous), 177 Conn. 648, 667. It should also be noted that the Court received testimony from both the plaintiff and Mr. Godinez as to their future plans, which the Court must consider to properly evaluate Dr. Meier's report, as well as whether such earlier relationship, as a cause of dissolution, should be considered. See section 46b-56(b), Connecticut General Statutes.
The study performed by the Family Services Unit also recommended that the father be given physical custody. The report cites several incidents of conflict when the mother deferred to the wishes of Mr. Godinez over the interests of the children, including one incident where Mr. Godinez physically disciplined Justin while the mother stood by. This CT Page 2859 was confirmed by Mr. Godinez, who also admitted that he has physically disciplined his own children.
Counsel for the children, in her brief, likewise urges that the father be given physical custody. While the Court is not bound by such a position; see Blake v. Blake,207 Conn. 217, 224; such position does provide guidance to the Court. By the same token the Court is bound by neither the Family Services Unit report; see Yontef v. Yontef, supra, p. 281, nor by Dr. Meier's report. See Bond v. Benning, 175 Conn. 308,313.
Having considered all of the pertinent evidence on the matter of physical custody, the Court is of the opinion that the award of physical custody of both children to the husband is in the present best interests of the children. The need of the children for stability in their environment has been and will be jeopardized by the presence of Mr. Godinez in their lives. The Court notes that both children are in counseling, which accentuates the urgency that their lives be stabilized. It is clear to the Court that the actions of Mr. Godinez have not only been disturbing to the children, but have exacerbated the relationship between the parents where friction should be minimized for the benefit of the children. There is no evidence that the mother has not been a caring and devoted parent, and, in the past, has had the primary responsibility for their rearing. However, the law requires a finding as to what decision is now in the best interests of the children. Yontef, supra, p. 283. (Emphasis added.)
The following visitation of the children with the mother is also ordered:
Mother will enjoy reasonable rights of visitation to include, and not be limited to, alternating weekends from Friday evening at 7:00 to Monday morning at 9:00 (directly to school or daycare). Additionally, mother will be entitled to visit on Wednesdays from 3:30 p.m. to 7:00 p.m. during the weeks following weekend visitation. During the weeks preceding visitation, she will be entitled to visit Tuesdays and Thursdays from 3:30 p.m. to 7:00 p.m.
For every month for which there is a fifth weekend, the parties will alternate the extra weekend. Mother will be entitled to the first extra weekend.
Mother will be entitled to visitation during the period from June 15 to August 15 of every year. Two consecutive weeks of this time should be uninterrupted time wherein father will not be entitled to visit. Mother will be CT Page 2860 required to give sixty days (60) written notice to father of this request for uninterrupted time. During the period from June 15 through August 15, father will enjoy reciprocal weekly visitation to parallel mother's schedule as stated above.
Holidays should be divided as follows:
a. Christmas — father will enjoy the 1990 Christmas holiday wherein he will have the children from 4:00 p.m. on Christmas Eve to 4:00 p.m. Christmas Day. Mother will have the children from 4:00 p.m. Christmas Day to noon the following day.
b. Chanukah and Passover — The first day of Chanukah, and Passover will always be with mother from 5:00 p.m. on the night before the Day to 5:00 p.m. the next day.
c. Good Friday and Easter — Good Friday and Easter will always be with the father.
d. Thanksgiving — Beginning in 1990, mother will enjoy the Thanksgiving holiday from 7:00 p.m. Wednesday to 12:00 noon Friday. If mother has the children for weekend visits, she will keep them through the weekend. Thereafter, the parties will alternate the Thanksgiving holiday in this fashion on a yearly basis.
e. Father's Day and father's birthday — These holidays shall be with father.
f. Mother's Day and mother's birthday — These holidays shall be with mother.
If there is no school on any of the aforementioned dates, the time of the visit shall be from 10:00 a.m. to 7:00 p.m. If it is a school day, the visit shall be from 3:30 p.m. to 7:00 p.m.
g. The Day Weekends — If any legal holiday falls on a Monday, the party who has the children for visitation the weekend immediately prior will be entitled to keep the children through the Monday holiday until 8:00 p.m.
h. Extended Visitations — Mother will be entitled to an extended visitation during the period of June 15 through August 15 as noted earlier. She will also be entitled to the February vacation (as set by the school vacation schedule) from Friday evening at 7:00 p.m. through the Monday after the two weekends wherein the children will be returned directly to CT Page 2861 school. Father will be entitled to the April vacation, the Christmas through New Year's vacation and the third week of August. Mother will be entitled to an additional week on sixty days (60) notice to father. This additional week may also occur when the children are in school, and mother agrees to be responsible for any and all school work for this week.
There should be a mutual exchange of notices concerning events for the children, e.g. dance recitals, sporting events, plays, class parties, trips, etc. There shall be a mutual exchange of any and all medical information and the party in custody of the children will give immediate notice of any emergency medical situation.
Mother shall be allowed free and liberal telephone access to the children when they are not in her care, and the children should be allowed free and liberal telephone access to their mother. A reciprocal order shall be in effect in favor of father for the time the children are in mother's care.
As to the property disposition, the order with respect to the dwelling at 48 Birch Terrace, Oakdale, Connecticut, in the name of the defendant, must follow the order re custody. Exclusive possession of the dwelling is hereby granted to the defendant in order to maintain the same premises, the home for the children. Such premises shall be vacated by the plaintiff no later than three weeks from the date of this judgment.
The Court finds the present fair market value of the property to be $130,000.00 with a mortgage balance of $45,000.00. Upon plaintiff vacating the premises, the defendant shall execute and deliver to the plaintiff a promissory note in the amount of $42,500.00, payable to her order, without interest, to become payable on December 31, 1997, or sooner, upon the occurrence of one of the following events: (1) remarriage of the defendant; (2) cohabitation by the defendant with an unrelated female; (3) death of the defendant; (4) sale of the premises; or (5) lease of the premises for a period of more than one (1) year. Upon sale of the premises the plaintiff shall hold the defendant harmless from that portion of any state and/or federal capital gains tax that may accrue with respect to her half interest.
All bank accounts, pensions, retirement funds, savings accounts, stocks and other evidence of debt or equity now in the name of either party shall remain in the name of such party. Any account previously standing in the name of any child shall be restored to the amount in such account as CT Page 2862 existed prior to withdrawal — i.e. at such time as any previous court order with respect to such asset became effective. All assets of the children shall be retained until the majority of such child.
The plaintiff shall transfer title to the 1988 Chrysler automobile to the defendant who shall hold her harmless from any debt thereon. The defendant shall transfer title to the 1987 Plymouth Colt to the plaintiff who shall hold the defendant harmless from any debt thereon.
The Court awards no alimony to either party. Each is young and healthy and gainfully employed, and the Court has entered an order as to the property settlement.
The defendant shall maintain medical insurance for both children through his employment. Any unreimbursed medical, dental, opthamological, orthodontal, and counseling expenses shall be divided equally between the parties.
The defendant shall name both children as beneficiaries on his life insurance policies, which designation shall remain irrevocable until the respective children reach eighteen years of age.
The defendant shall forthwith pay the sum of $350.00 to plaintiff's counsel in accordance with the pendente lite order, together with any balance found to be currently due under the pendente lite support order.
The Court does not order the plaintiff to pay support of the children, even though the guidelines will support such an obligation. The Court has considered the alimony statute, as well as the pertinent tax statutes and regulations, as well as the disparity of income between the plaintiff and defendant, and deems it inequitable to enter such an order. The defendant may claim both children as exemptions on his income tax.
Counsel fees are awarded to neither party.
Fees incurred by the counsel for the children for the trial are approved in the amount of $3,000.00, and each party is ordered to pay one-half thereof forthwith. The plaintiff is further ordered to pay a past due fee of $628.75 and the defendant is ordered to pay a past due fee of $380.00.
The assistance of counsel in providing the Court with memoranda is appreciated. CT Page 2863
BURNS, J.