MICHAEL F. CHEBRO ET AL.
*v.* JONATHAN C. AUDETTE
(AC 33262)

Lavine, Alvord and Schaller, Js.

Argued March 13—officially released September 25, 2012

*Matthew G. Berger*, for the appellant (defendant).

*Brian J. Murphy*, for the appellees (plaintiffs).

*Opinion*

LAVINE, J. This appeal arises out of a quiet title action, brought pursuant to General Statutes § 47-31, concerning the location of a boundary between two parcels of land in Woodstock. The defendant, Jonathan C. Audette, appeals from the judgment rendered in favor of the plaintiffs, Michael F. Chebro and Jeanne E. Curtin-Chebro, after a trial to the court. On appeal, the defendant claims (1) that the court's findings of fact are clearly erroneous and (2) that the court abused its discretion (a) in permitting the plaintiffs' expert to testify and (b) in admitting into evidence as a business

record a survey that the plaintiffs' expert prepared. We affirm the judgment of the trial court.

The court made the following findings of fact in its memoranda of decision issued September 23, 2010, and March 4, 2011. In 1975, predecessors in title to the defendant engaged in a land swap with predecessors in title to the plaintiffs. The plaintiffs' predecessors in title hired Gilbert F. Perry to survey the land in preparation for the conveyance. Perry prepared a survey, the Pine Brook Manor survey, dated June 23, 1975, and recorded it in the Woodstock land records.

The Pine Brook Manor survey consists of a legal description of the location of the boundaries of the property, utilizing physical features, angles, bearings and distances. Further, the Pine Brook Manor survey incorporates by reference a map depicting the premises, also dated June 23, 1975, filed with the Woodstock town clerk. The parties agree that this survey is ambiguous and inaccurate in its mathematical calculations. The description of the property states that the boundaries it details come back around to where they begin, creating a "closed" geometric shape. Yet, the angles and distances in the description do not actually come back to where they begin and do not actually form a closed geometric shape. Nevertheless, deeds to both the plaintiffs' and the defendant's properties have referred to the Pine Brook Manor survey since it was completed.

The plaintiffs took title to their parcel in 1994, and this boundary dispute began soon after the defendant acquired title to his parcel in 2006. The plaintiffs commenced an action to quiet title pursuant to § 47-31, and the defendant filed a counterclaim seeking essentially the same relief. In an attempt to discern the intent of the predecessors in title who engaged in the land swap, the parties each hired surveyors to prepare surveys of the defendant's parcel. The defendant employed Jeffrey

Stefanik; the plaintiffs employed Barry Clarke, who completed his survey after Stefanik completed his.[1] Additional facts are set forth as necessary.

At trial, the case largely turned on the expert testimony of the surveyors and their explanations of various exhibits.[2] After hearing and analyzing the evidence, the court rendered judgment in favor of the plaintiffs, adopting the Clarke survey in its decision.[3] This appeal followed.

I

The defendant first claims that the court's judgment rests on clearly erroneous findings of fact that are unsupported by the record.[4] Specifically, the defendant claims that the court committed clear error in finding Stefanik's opinion on the recorded dimensions to be less accurate than Clarke's opinion and in crediting Clarke's reliance on certain iron pins.[5] Additionally, at

[1] The parties agree that Stefanik personally visited the site to take measurements, and that Clarke utilized measurements, handwritten reports and computerized data that his firm's field crew collected.

[2] The court also heard testimony from the plaintiffs and the defendant, as well as from a neighbor, Ernest St. Jean.

[3] There was a factual misstatement in the opinion due to a transcription error, which suggested that Clarke completed his survey before Stefanik. The defendant filed a motion for reargument, which the court granted. The court corrected its error, clarifying that the misstatement had no bearing on the outcome of the case and that Clarke "presented the better or weightier evidence for the court's consideration."

[4] The precise nature of the defendant's claim is not clear at first blush. The defendant simply claims that "[t]he [t]rial [c]ourt erred in entering judgment for the [p]laintiffs." A review of the defendant's briefs and oral argument to this court demonstrates that the defendant takes issue with the court's findings of fact.

[5] The defendant also claims that the court erroneously found that Stefanik did not rely on monuments at all. The court's September 23, 2010 memorandum of decision specifically finds otherwise. The court points out that Stefanik "locate[d] an iron pin" other than the pin Clarke used, and that "Stefanik utilized the iron pin" to determine starting points. The court's statement that "the surveyor retained by the defendant did not rely upon fixed monuments," when read in context, pertains only to a particular portion of the survey. We discuss that portion subsequently in this opinion.

oral argument before this court, the defendant claimed that although the court corrected its erroneous finding of fact; see footnote 3 of this opinion; it erred by not changing its judgment. We do not agree.

The following additional facts and procedural history are pertinent to resolving this claim. The ambiguous Pine Brook Manor survey describes the disputed boundary between the plaintiffs' and the defendant's parcels in the form of two lines: "[From] a point on the stone wall; thence approximately N. 57 degrees 00' W. 190 feet, more or less; thence approximately S. 81 degrees 45' W. 200 feet, more or less, to a fence corner post . . . ." At oral argument before this court, the defendant pointed out that the parties agree as to both the location of the "point in a stone wall" and the "fence corner post." According to the defendant, the substance of the dispute is the location of the point where the two lines converge.

Clarke and Stefanik employed different methods in determining the intended location of the two lines, as well as the point where they converge. Clarke testified that he relied on the mutually agreed upon point on the wall and corner post, as well as an *additional monument*: a pin depicted in the map that the Pine Brook Manor survey incorporates by reference. In his survey, Clarke further utilized angles, and in scrutinizing the map the Pine Brook Manor survey incorporates by reference, he utilized distances. Stefanik, by contrast, did not rely on the additional monument. In ascertaining the intended boundary, Stefanik testified that he utilized *only distances* in addition to the mutually agreed on point on the wall and corner post. The court adopted the boundary line that Clarke submitted.

The following legal principles guide our analysis of this claim. "The resolution of conflicting factual claims falls within the province of the trial court. . . . The

trial court's findings are binding upon [a reviewing] court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole." (Internal quotation marks omitted.) *Herbert S. Newman & Partners, P.C.* v. *CFC Construction Ltd. Partnership*, 236 Conn. 750, 762, 674 A.2d 1313 (1996). Ordinarily, "[t]he construction of a deed in order to ascertain the intent expressed in the deed presents a question of law . . . ." (Internal quotation marks omitted.) *Lakeview Associates* v. *Woodlake Master Condominium Assn., Inc.*, 239 Conn. 769, 780, 687 A.2d 1270 (1997). Yet, "[w]here there is an ambiguity in the description of a boundary line in a deed, the question of what the parties intended that line to be is one of fact for the trial court." *Lake Garda Improvement Assn.* v. *Battistoni*, 160 Conn. 503, 511, 280 A.2d 877 (1971); see also 12 Am. Jur. 2d, Boundaries §§ 112 and 114 (2009); 23 Am. Jur. 2d 201–202, Deeds § 192 (2009). Additionally, "[a] reference to [a] map in [a] deed, [f]or a more particular description, incorporates [the map] into the deed as fully and effectually as if copied therein." (Internal quotation marks omitted.) *Schwartz* v. *Murphy*, 74 Conn. App. 286, 291, 812 A.2d 87 (2002), cert. denied, 263 Conn. 908, 819 A.2d 841 (2003), cert. denied, 546 U.S. 820, 126 S. Ct. 352, 163 L. Ed. 2d 61 (2005); see also General Statutes § 7-31 (governing incorporation of recorded maps into deeds).

"An expert witness testifies to assist the trier of fact in understanding the evidence or in determining a fact in issue." (Internal quotation marks omitted.) *Lisiewski* v. *Seidel*, 72 Conn. App. 861, 871, 806 A.2d 1121, cert. denied, 262 Conn. 921, 922, 812 A.2d 865 (2002), quoting Conn. Code Evid. § 7-2. "The credibility of the witnesses and the *weight* to be accorded to their testimony is for the trier of fact. . . . [An appellate] court does not try issues of fact or pass upon the credibility of witnesses." (Emphasis added; internal quotation marks omitted.)

*Wasniewski* v. *Quick & Reilly, Inc.*, 292 Conn. 98, 103, 971 A.2d 8 (2009). "The [trial] court [i]s free to accept or to reject, in whole or in part, the testimony of one expert over another." *Palmieri* v. *Cirino*, 90 Conn. App. 841, 847, 880 A.2d 172, cert. denied, 276 Conn. 927, 889 A.2d 817 (2005).

In the present case, the court heard extensive testimony from the plaintiffs' and the defendant's surveyors, Clarke and Stefanik, both of whom explained in detail the bases for their conclusions. With respect to the location of the disputed boundary line, Clarke testified that he relied on a monument: a pin referenced on the map incorporated by reference into the Pine Brook Manor survey. See *Frank Towers Corp.* v. *Laviana*, 140 Conn. 45, 50, 97 A.2d 567 (1953) ("[w]here the boundaries of land are described by known and fixed monuments which are definite and certain, the monuments will prevail over courses and distances"). He also relied on scaled distances on the map, as well as angles in the description. Stefanik testified that he did not utilize that monument. In light of their testimony and ample additional evidence, we conclude that the court's factual findings were not clearly erroneous.

The defendant does not claim that there was no evidence to support the court's findings; rather, he claims that his evidence carried more weight. "[I]t is the function of the trial court to weigh the evidence and the credibility of the parties and to find the facts; we cannot retry the case on appeal." *Riscica* v. *Riscica*, 101 Conn. App. 199, 207, 921 A.2d 633 (2007). This court "do[es] not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached. Rather, we focus on the conclusion of the trial court, as well as the method by which it arrived at that conclusion, to determine whether it is legally correct and factually supported." *Pandolphe's Auto Parts, Inc.* v. *Manchester*, 181 Conn. 217, 222, 435 A.2d

24 (1980). Both parties produced witnesses, and it was the function of the trier of fact to determine credibility. See *Dooley* v. *Leo*, 184 Conn. 583, 586, 440 A.2d 236 (1981). In doing so, the court could believe all, some or none of the testimony of any particular witness, including either expert witness. Id. The court resolved, the disputed question of fact as to the location of the contested boundary, and this court will not disturb the findings of the trial court.

## II

The defendant claims that the court abused its discretion in issuing two evidentiary rulings. In particular, the defendant claims (1) that the court should not have admitted Clarke's survey into evidence as a business record, and (2) that the court should not have permitted Clarke to testify about his survey because he was unqualified to do so. The plaintiffs contend that neither claim was preserved properly and argue in the alternative that each claim should fail on its merits. We agree with the plaintiffs that the objection to the survey as a business record was not preserved properly. Although the defendant's objection to Clarke's testimony was preserved properly, the substance of the claim is without merit. As such, both of the defendant's claims fail.

Both claims arise from the same point in the trial. When the plaintiffs' counsel sought to offer Clarke's survey, the defendant's counsel questioned Clarke on voir dire. The defendant's counsel then stated: "I'm going to object to [the survey] coming in, Your Honor. I think this witness isn't really qualified to testify about what at least purports to be on [it]s own face, [Kenneth] Peterson's[6] survey."

Ordinarily, this court "will not review an issue that has not been properly raised before the trial court."

---

[6] Clarke testified that Peterson was his supervisor and that Peterson signed the surveys pursuant to the firm's ordinary course of business.

*Bell Atlantic Mobile, Inc.* v. *Dept. of Public Utility Control,* 253 Conn. 453, 485, 754 A.2d 128 (2000); see also Practice Book § 60-5. The standard for the preservation of a claim alleging an improper evidentiary ruling at trial is well settled. "In order to preserve an evidentiary ruling for review, trial counsel must object properly. . . . In objecting to evidence, counsel must properly articulate the basis of the objection so as to apprise the court of the precise nature of the objection and its real purpose, in order to form an adequate basis for a reviewable ruling." (Citations omitted; internal quotation marks omitted.) *State* v. *Bush,* 249 Conn. 423, 427–28, 735 A.2d 778 (1999); see also Practice Book § 5-5.

"[T]he trial court has wide discretion in ruling on the admissibility of expert testimony and, unless that discretion has been abused or the ruling involves a clear misconception of the law, the trial court's decision will not be disturbed." (Internal quotation marks omitted.) *Sullivan* v. *Metro-North Commuter Railroad Co.,* 292 Conn. 150, 157, 971 A.2d 676 (2009). "Appellate review of the admission of a document under [the business record exception to the rule against hearsay] is limited to determining whether the trial court abused its discretion." *River Dock & Pile, Inc.* v. *O & G Industries, Inc.,* 219 Conn. 787, 795, 595 A.2d 839 (1991).

A

The defendant claims that the court abused its discretion by admitting into evidence as a business record a survey prepared by the plaintiffs' expert. Because the defendant did not make a proper and timely objection, the claim is not preserved for appeal and we decline to afford it review.

Business records are an exception to the hearsay rule. See Conn. Code Evid. § 8-4 (a) and commentary; General Statutes § 52-180. The defendant's counsel mentioned neither the business record exception, nor

the hearsay rule, when objecting at this point in the trial. As we state in part II B of this opinion, the defendant's counsel raised an objection to the survey based on Clarke's *qualifications*.[7] Elsewhere in the trial, the defendant's counsel distinctly raised objections on hearsay grounds. "Counsel thus failed to state distinctly the matter objected to and the ground of objection as required . . . for appellate review." (Internal quotation marks omitted.) *State* v. *Darryl W.*, 303 Conn. 353, 371, 33 A.3d 239 (2012). For this court "[t]o review [a] claim, which has been articulated for the first time on appeal and not before the trial court, would result in a trial by ambuscade of the trial judge." (Internal quotation marks omitted.) Id. We decline to review the claim.

## B

The defendant claims that the court abused its discretion by permitting Clarke to testify about a survey signed by someone other than Clarke when he did not personally visit the location.[8] The defendant further argues that Clarke "did not possess the requisite first-hand knowledge to testify . . . ." (Citation omitted.) We disagree.

[7] While overruling the objection that Clarke was not qualified to testify about the survey, the court did state that the business record exception would apply. Earlier statements at trial offer illuminating context. It is clear that the court identified the exception in the interest of expediency. ("I'm just trying to speed things up a bit—if we use the business records exception to the hearsay"). At the point in the trial in question, the defendant's counsel did not object to the survey being admitted on the ground that it was inadmissible pursuant to the business record exception.

[8] The substance of the defendant's claim is not immediately clear. In his brief, the defendant argues that "[t]he [t]rial [c]ourt erred in permitting the expert testimony of Barry Clarke." Initially, it would seem that the defendant's claim is directed at *all* of Clarke's testimony. Such a claim was not preserved. Clarke testified about his professional qualifications as a surveyor, and his resume was admitted into evidence without objection from the defendant, and Clarke offered extensive testimony before the objection to the testimony about the survey. A review of the defendant's briefs and oral argument to this court demonstrates that the defendant takes issue with Clarke's testimony about the survey.

As a preliminary matter, we address the plaintiffs' contention that the issue has not been preserved properly. At trial, the defendant's counsel stated, "I'm going to object to [the survey] coming in, Your Honor. I think [Clarke] isn't really qualified to testify about what at least purports to be on [it]s own face, Mr. Peterson's survey." In overruling the objection, the court stated, among other things, "I think [Clarke is] qualified to testify with regard to the survey that was prepared by his firm." The statement of the defendant's counsel served to "apprise the trial court of the precise nature of the objection and its real purpose, in order to form an adequate basis for a reviewable ruling." (Internal quotation marks omitted.) *State* v. *Bush*, supra, 249 Conn. 427–28. The defendant properly preserved the issue of whether Clarke was qualified to testify about the survey.

"Generally, if a proponent of testimony establishes reasonable expert qualifications for a witness, further objections to that expert's testimony go to its weight, not its admissibility." *Beverly Hills Concepts, Inc.* v. *Schatz & Schatz, Ribicoff & Kotkin*, 247 Conn. 48, 63, 717 A.2d 724 (1998). "[I]n order to render an expert opinion the witness must be qualified to do so and there must be a factual basis for the opinion." (Internal quotation marks omitted.) *Sullivan* v. *Metro-North Commuter Railroad Co.*, supra, 292 Conn. 158; see also Conn. Code Evid. § 7-2. "[A]n expert's testimony may be based on reports of others if the reports are those customarily relied on by such an expert in formulating an opinion." *State* v. *Cosgrove*, 181 Conn. 562, 584, 436 A.2d 33 (1980); see also Conn. Code Evid. § 7-4 (b), commentary ("[t]he expert's opinion may be based on facts made known to the expert before trial and of which the expert has no firsthand knowledge").

The general rule controls the present case. Clarke testified about his professional qualifications as a surveyor, and his resume was admitted into evidence without objection from the defendant. The defendant has not challenged the proof of Clarke's qualifications. "Where a surveyor, whose qualifications are accepted by the court, has made a map showing the sum of various acquisitions based upon an examination of the chain of title of all the parties affected, a review of the maps of record and information in the town records, an inspection of the property in question, field work and calculations, his testimony may be accepted as that of an expert." *Bond* v. *Benning*, 175 Conn. 308, 312–13, 398 A.2d 1158 (1978). The plaintiffs "establishe[d] reasonable expert qualifications for [their surveyor, and] further objections to that expert's testimony [went] to its weight, not its admissibility." *Beverly Hills Concepts, Inc.* v. *Schatz & Schatz, Ribicoff & Kotkin*, supra, 247 Conn. 63. We conclude that the court did not abuse its discretion in permitting Clarke to testify.

The judgment is affirmed.

In this opinion the other judges concurred.