## PATRICK WOOD *v.* CLUB, LLC, ET AL.
## (AC 32738)

Robinson, Espinosa and Pellegrino, Js.

Argued October 25, 2011—officially released April 17, 2012

*Jan C. Trendowski*, for the appellant (named defendant).

*Frank C. Bartlett, Jr.*, for the appellee (plaintiff).

### Opinion

PELLEGRINO, J. The defendant Club, LLC, appeals from the judgment of the trial court, following a jury trial, rendered in favor of the plaintiff, Patrick Wood.[1]

---

[1] The plaintiff brought this action against Club, LLC, and Post Road Entertainment, doing business as the Thirsty Turtle (Post Road). After the court rendered its judgment, the plaintiff filed a motion to substitute PRE Partners, LLC, as a party defendant in place of Post Road, stating that it recently had learned that the operator of the Thirsty Turtle was, in fact, PRE Partners, LLC, and that Post Road was a trade named used by PRE Partners, LLC, when doing business in Connecticut. The court denied the plaintiff's motion to substitute, ruling that it was not appropriate to cite in a new defendant postjudgment. The court added that Post Road did not describe any legally cognizable entity, a finding that has not been challenged. We conclude that Post Road is not a party to this appeal, and therefore refer in this opinion to Club, LLC, as the defendant.

On appeal, the defendant claims that (1) the court improperly allowed the plaintiff's expert to testify, (2) the court erred in refusing to instruct the jury on liability for actions of third parties, (3) the evidence was insufficient to establish that the plaintiff was within the scope of risk allegedly created by the defendant's conduct, (4) the court erred in charging the jury on future medical expenses, (5) the court erred in excluding testimony on the plaintiff's intoxication and (6) the court erred in permitting testimony on the defendant's reputation.[2] We disagree with the defendant and, accordingly, affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On March 24, 2007, the plaintiff went to a birthday party at the Thirsty Turtle, a nightclub, which was owned by the defendant. The party was arranged by the plaintiff's girlfriend, Mary Kristian Larosa, who reserved the downstairs bar and lounge area of the establishment from 8 to 10 p.m. At the end of that time period, the space was opened to the general public, at which point a group of male patrons who were not members of the plaintiff's party entered the downstairs area. This group of men stood to the side of the bar area talking amongst

---

[2] The defendant also argues that the court improperly denied its motion for directed verdict. The defendant claims that the court erred in denying that motion because it improperly considered evidence that was presented during its case-in-chief. The defendant claims that this evidence should not have been considered under Practice Book § 16-37 because the motion was made after the plaintiff rested but prior to when the defendant presented evidence. Because the defendant raises this issue for the first time in its reply brief, we do not consider it on appeal. "Claims of error by an appellant must be raised in his original brief . . . so that the issue as framed by him can be fully responded to by the appellee in its brief, and so that we can have the full benefit of that written argument. Although the function of the appellant's reply brief is to respond to the arguments and authority presented in the appellee's brief, that function does not include raising an entirely new claim of error." (Citation omitted; internal quotation marks omitted.) *Commissioner of Health Services* v. *Youth Challenge of Greater Hartford, Inc.*, 219 Conn. 657, 659 n.2, 594 A.2d 958 (1991).

themselves and watching members of the plaintiff's party. The men began making inappropriate comments to the women whom they were watching. Eventually, they tried dancing with several of the female members of the plaintiff's party. Their attempts at dancing with the women amounted to unwanted advances and made many of the women visibly uncomfortable. Some of the women reported the behavior of these men to the bar staff. The plaintiff termed the behavior of these male patrons as the men "dancing up" on the women, or, approaching the female patrons from behind and "grinding onto" their bodies. When the plaintiff observed one of the men approaching Larosa, he placed his arm around her and turned his back to the man in order to prevent the man from disturbing her. The plaintiff then was immediately hit over the head with a glass bottle. The assailant ran out of the nightclub where he was pursued by Gregory Boehmcke, the general manager of the Thirsty Turtle. Boehmcke provided the Stamford police with an identification of the assailant, but an arrest was never made. The plaintiff suffers partial permanent impairment due to the injuries sustained from the assault.

The plaintiff filed this action against the defendant alleging both negligent and reckless supervision of premises.[3] The jury returned a verdict in favor of the plaintiff in the amount of $300,000, which was comprised of $60,000 in economic damages and $240,000 in noneconomic damages. The court rendered judgment in favor of the plaintiff in accordance with the jury's verdict. The defendant filed a motion to set aside the verdict, a motion for a directed verdict and a motion for remittitur, which were denied by the court. This appeal followed.

---

[3] The plaintiff also alleged a count sounding in spoliation of evidence, which was stricken by the court.

I

We first address the defendant's claims that the court abused its discretion in admitting or precluding certain testimony.

A

The defendant first claims that the court improperly allowed the plaintiff's bar security expert, Kevin DePalma, to testify on the ground that he lacked the necessary qualifications. The plaintiff claims that the court did not abuse its discretion in allowing DePalma to testify as an expert because the court properly concluded that DePalma had greater knowledge than the average juror in the field of bar security. We agree with the plaintiff that DePalma possessed the necessary qualifications to render expert testimony and that the court did not abuse its discretion in allowing him to give opinion testimony.

Before trial, the plaintiff disclosed DePalma as his expert in bar security. The plaintiff asserted in his disclosure that DePalma would testify that the actions of the security staff of the defendant fell below the standard of care for bar security, that the standard of care required the defendant's security staff to intervene when complaints were first made of the aggressive dancing and that, had the security staff for the defendant properly performed their duties, the assault of the plaintiff would not have occurred.

DePalma was called to testify on the first day of trial and was offered as an expert witness. On voir dire, he testified that he was employed for three and one-half years on the security staff of a bar in New Haven. Although DePalma had no formal training, he testified that he helped to develop the security standards for the bar that employed him. He also testified that he did not consider himself to be an expert in the field of bar

security. Initially, the court refused to qualify DePalma as an expert, but it reversed its ruling after considering certain portions of DePalma's deposition testimony that the plaintiff presented to the court. During his deposition, DePalma testified: "I definitely have a greater knowledge than any person walking in off the street. Working in the security field four years, I have had— like I said, I have had a lot of altercations. I know how to talk to people and diffuse situations before they happen. I know I should be aware of the whole overcast of people, to watch to see what happens, and I should be watching certain people because they seem more aggressive. If they are drinking and they get more aggressive, they tend to fight and it could have been prevented if somebody was aware of these people aggressively dancing on girls who are not wanting their dancing." The court indicated that there was humility in DePalma's voir dire testimony and that the deposition testimony laid a foundation for DePalma's expertise and suggested that he was familiar with the standards of care in the field and met the threshold standard for an expert. On this basis, the court reversed its initial ruling and allowed DePalma to testify.

We begin our review of this issue by setting forth our well established standard of review regarding a trial court's ruling on the admissibility of expert testimony. "[T]he trial court has wide discretion in ruling on the admissibility of expert testimony and, unless that discretion has been abused or the ruling involves a clear misconception of the law, the trial court's decision will not be disturbed." (Internal quotation marks omitted.) *Coughlin* v. *Anderson*, 270 Conn. 487, 514–15, 853 A.2d 460 (2004); see also *State* v. *Griffin*, 273 Conn. 266, 274–75, 869 A.2d 640 (2005); *Pestey* v. *Cushman*, 259 Conn. 345, 368–69, 788 A.2d 496 (2002); *Kenney* v. *Mystic Valley Hunt Club, Inc.*, 93 Conn. App. 368, 371, 889 A.2d 829 (2006). "In determining whether there has been

an abuse of discretion, the ultimate issue is whether the court could reasonably conclude as it did." (Internal quotation marks omitted.) *New Hartford* v. *Connecticut Resources Recovery Authority*, 291 Conn. 433, 477, 970 A.2d 592 (2009). "Even if a court has acted improperly in connection with the introduction of evidence, reversal of a judgment is not necessarily mandated because there must not only be an evidentiary [impropriety], there also must be harm." *Farrell* v. *Bass*, 90 Conn. App. 804, 811, 879 A.2d 516 (2005), citing *Rokus* v. *Bridgeport*, 191 Conn. 62, 70, 463 A.2d 252 (1983).

Our Supreme Court has articulated the test for the admission of expert testimony, which is deeply rooted in common law. "Expert testimony should be admitted when: (1) the witness has a special skill or knowledge directly applicable to a matter in issue, (2) that skill or knowledge is not common to the average person, and (3) the testimony would be helpful to the court or jury in considering the issues." (Internal quotation marks omitted.) *State* v. *West*, 274 Conn. 605, 629, 877 A.2d 787, cert. denied, 546 U.S. 1049, 126 S. Ct. 775, 163 L. Ed. 2d 601 (2005); *Maher* v. *Quest Diagnostics, Inc.*, 269 Conn. 154, 167–68, 847 A.2d 978 (2004); see also Conn. Code Evid. § 7-2.[4] In other words, "[i]n order to render an expert opinion the witness must be qualified to do so and there must be a factual basis for the opinion." (Internal quotation marks omitted.) *State* v. *Douglas*, 203 Conn. 445, 452, 525 A.2d 101 (1987).

On the basis of his testimony, there can be no doubt that DePalma had knowledge of the field of bar security that was not common to the average person and that

---

[4] Section 7-2 of the Connecticut Code of Evidence provides: "A witness qualified as an expert by knowledge, skill, experience, training, education or otherwise may testify in the form of an opinion or otherwise concerning scientific, technical or other specialized knowledge, if the testimony will assist the trier of fact in understanding the evidence or in determining a fact in issue."

it was helpful to the jury in evaluating the security protocol of the defendant. DePalma had worked in the field of bar security for three and one-half or four years. During that time he worked one to three shifts per week at a bar in New Haven. His hours of employment were typically on Thursday, Friday and Saturday nights— those nights of the week when the bar was most busy. Although the bar at which he worked had no written standards of security, DePalma had a general knowledge of the field of bar security drawn from his tenure in the field. He was aware of the standards and expectations of some bars and establishments through his conversations with fellow members of his profession.

It is not relevant, as was alluded to at trial, that DePalma had no formal education, certification or license in the field of bar security. As our Supreme Court has stated, "[i]t is not essential that an expert witness possess any particular credential, such as a license, in order to be qualified to testify, so long as his education *or experience* indicate that he has knowledge on a relevant subject significantly greater than that of persons lacking such education or experience." (Emphasis added; internal quotation marks omitted.) *Beverly Hills Concepts, Inc.* v. *Schatz & Schatz, Ribicoff & Kotkin*, 247 Conn. 48, 62, 717 A.2d 724 (1998). Through his vocational experience and his on the job training, DePalma honed the ability to identify problem patrons and, as he testified, to "diffuse situations before they happen." This skill set made him particularly fit to render the opinion that unsolicited and aggressive dancing with women would lead to an altercation.[5]

---

[5] We also have reviewed the defendant's argument that the court admitted the testimony of DePalma *solely* on the basis that precluding him as a witness would have unfairly "blindsided" the plaintiff and perhaps "knocked out" the plaintiff's case. On the contrary, the court's decision to allow DePalma to testify, after originally ruling otherwise, appears to have been significantly informed by the deposition testimony of DePalma, in which he described his expertise in greater detail. Assuming, arguendo, that the court's decision to allow DePalma to testify was based solely on procedure, we

Accordingly, we conclude that the court did not abuse its discretion in allowing DePalma to testify as an expert witness.[6] See *New Hartford* v. *Connecticut Resources Recovery Authority*, supra, 291 Conn 478. ("reversal is required [only] where the abuse is manifest or where injustice appears to have been done" [internal quotation marks omitted]).

B

Next, we address the defendant's claim that the court erred in excluding evidence that might prove that the plaintiff was intoxicated at the time of the assault. The defendant claims that the testimony on intoxication was relevant as to the issue of the plaintiff's credibility and his ability to recall events that he later testified about at trial. The plaintiff claims that this evidence was irrelevant because his testimony was uncontroverted and his credibility was never called into question. We conclude that the court properly excluded evidence relating to the plaintiff's intoxication.

"The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion." *State* v. *Avis*, 209 Conn. 290, 298, 551 A.2d 26 (1988), cert. denied, 489 U.S. 1097, 109 S. Ct. 1570, 103 L. Ed. 2d 937 (1989). As we stated in our discussion of the defendant's claim that the court improperly allowed expert testimony, we will only reverse an evidentiary ruling of a trial court if we find

would nonetheless conclude that the court did not abuse its discretion on the basis that there is adequate evidence in the record establishing DePalma's expertise.

[6] Assuming, arguendo, that the court improperly allowed DePalma's testimony, such error is harmless on the ground that the appropriate standard of care for bar security was not in dispute. For example, the defendant's bar manager, Boehmcke, substantially agreed with DePalma concerning the proper standard of care to be employed by bar security personnel. Moreover, DePalma agreed that the standard of care as set forth in the defendant's employee manual was appropriate.

both an abuse of discretion and harm to the defendant. See *Farrell* v. *Bass*, supra, 90 Conn. App. 811.

"Relevant evidence is evidence that has a logical tendency to aid the trier in the determination of an issue." (Internal quotation marks omitted.) *State* v. *Gupta*, 297 Conn. 211, 238, 998 A.2d 1085 (2010). In this case, the issues to be determined were whether the defendant was negligent and reckless in its supervision of its premises. The plaintiff's level of intoxication, or lack thereof, had no bearing on those issues.[7] We therefore conclude that the court's exclusion of testimony on the plaintiff's intoxication was proper.[8]

C

We next address the defendant's claim that the court should not have permitted testimony on the defendant's reputation. At trial, the defendant objected to this testimony on the ground of "relevance." On appeal, the defendant argues that the evidence was inadmissible on the ground of "hearsay."

The plaintiff claims that this issue is not preserved properly because the defendant raises a different claim on appeal as to the inadmissibility of the evidence. We agree with the plaintiff that the defendant's claim was not preserved properly. See, e.g., *Curry* v. *Allan S.*

[7] We note, moreover, that our case law and rules of evidence preclude the admission of evidence when its probative value is outweighed by the harm caused by its admission. The testimony on the plaintiff's intoxication level was not probative of the issues to be determined by the court and would have served no greater purpose than to harm the plaintiff and to confuse the jury. See Conn. Code Evid. § 4-3; see also, e.g., *State* v. *Rinaldi*, 220 Conn. 345, 356, 599 A.2d 1 (1991).

[8] Assuming, arguendo, that the court's exclusion of testimony on the plaintiff's intoxication was improper, such error is harmless because his recollection of the assault was corroborated by Larosa and the plaintiff's brother, Benjamin Wood. The testimony of Larosa and Benjamin Wood alleviates any concern that the plaintiff's alleged intoxication rendered his testimony unreliable.

*Goodman, Inc.*, 286 Conn. 390, 425, 944 A.2d 925 (2008) ("plaintiff cannot now for the first time present a different claim on appeal"). Therefore we decline to address the defendant's claim.[9]

## II

We next consider the defendant's claims that the court erred in certain instructions to the jury.

### A

We first address the defendant's claim that the court erred in its instructions to the jury by not instructing the jury on the liability for the actions of third parties as per the defendant's request to charge. The defendant

---

[9] To the extent that the defendant may be deemed to have preserved the claim that the trial court improperly allowed testimony on the defendant's reputation, the defendant cannot prevail on that claim. Review of a trial court's decision to permit testimony is reviewed under an abuse of discretion standard and subject to reversal only if the error was both improper and harmful. See *Farrell* v. *Bass*, supra, 90 Conn. App. 811. Our principles of evidence prohibit the use of character evidence to establish that one acted in accord with the conduct alleged. As our Supreme Court has stated, "the character or reputation of a party is deemed by the law to be irrelevant in determining the *merits of the controversy* . . . ." (Emphasis added; internal quotation marks omitted.) *Bosworth* v. *Bosworth*, 131 Conn. 389, 391, 40 A.2d 186 (1944). So too, our rules of evidence state that "[e]vidence of a trait of character of a person is inadmissible for the purpose of proving that the person acted in conformity with the character trait *on a particular occasion* . . . ." (Emphasis added.) Conn. Code Evid. § 4-4 (a). The scope of this prohibition, therefore, is one limited only to evidence used to establish that a defendant acted in a way that conformed to *particular conduct* on a *particular occasion*. In this case, although the liability of the defendant was in question, there was no dispute that the plaintiff was struck on the head with a glass bottle at the defendant's establishment. The defendant's "bad reputation" was not used to prove that the plaintiff was assaulted at the Thirsty Turtle, and, consequently, the prohibition does not apply. The court, therefore, did not act improperly in permitting testimony on the defendant's bad reputation.

Yet assuming, arguendo, that the court improperly allowed that testimony, such error is nonetheless harmless as the defendant's own general manager, Boehmcke, admitted that there were fights at the Thirsty Turtle both before and after the assault on the plaintiff.

specifically argues that the omission of that instruction meant that the jury was not given the opportunity to consider whether the assault was of the same general nature as the foreseeable risk created by aggressive dancing, a question that if answered in the negative, would ostensibly absolve the defendant of liability.

We set forth our well settled standard of review on jury instructions. "A challenge to the validity of jury instructions presents a question of law over which this court has plenary review." *Pickering* v. *Rankin-Carle*, 103 Conn. App. 11, 14, 926 A.2d 1065 (2007). "When reviewing [a] challenged jury instruction . . . we must adhere to the well settled rule that a charge to the jury is to be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts. . . . [T]he test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper." (Internal quotation marks omitted.) *Godwin* v. *Danbury Eye Physicians & Surgeons, P.C.*, 254 Conn. 131, 142–43, 757 A.2d 516 (2000). Our Supreme Court has further stated that a "court is under no duty at any time to charge in the exact language requested. . . . Failure to charge precisely as proposed by a [party] is not error where the point is fairly covered in the charge. . . . Instructions are adequate if they give the jury a clear understanding of the issues and proper guidance in determining those issues." (Citations omitted.) *Tomczuk* v. *Alvarez*, 184 Conn. 182, 190, 439 A.2d 935 (1981).

The following additional facts are relevant to the defendant's claim. The defendant requested that the

court charge the jury with regard to the duty to protect a person from the wrongful conduct of third persons.[10] The plaintiff objected to the defendant's proposed charge on the ground that the jury might be confused by such an instruction. In declining to give the requested instruction, the court distinguished the facts of the present case from the facts of *Stewart* v. *Federated Dept. Stores, Inc.*, 234 Conn. 597, 611, 662 A.2d 753 (1995), the case cited as authority for the requested charge.[11] On appeal, the defendant contends that as a result of the court's failure to charge as requested, the jury never considered whether the assault was of the same general nature as dancing. The defendant further claims that it was forced to meet an undefined standard with regard to cause and foreseeability. We disagree and conclude that, when viewed as a whole, the charge as given adequately conveyed the legal principles necessary for the determination of proximate cause, including whether the assault on the plaintiff by the third party was of the same general nature as the foreseeable risk created by the defendant's conduct.[12] Under these circumstances,

---

[10] The defendant's request to charge states in relevant part: "The plaintiff claims that the defendant was negligent in failing to provide adequate security to prevent a third person from committing crimes on the premises that were likely to cause harm to persons such as the plaintiff.

"You have already been instructed on the duties owed to an invitee by one who controls the premises. In this case, if you find that the plaintiff was an invitee and if you find that the defendant was in control of the premises, the defendant owed a duty to take reasonable steps to safeguard the plaintiff on the premises from the criminal acts of third persons provided the plaintiff also proves [1] that the defendant had notice of the risk and [2] that the defendant's conduct placed the plaintiff within the scope of risk."

[11] Specifically, the court noted that in *Stewart*, the plaintiff business invitee was attacked by a third party who was not an invitee, whereas in the present case, both the plaintiff and the attacker were business invitees of the defendant.

[12] The court's entire instruction on causation is as follows: "If you find that the defendant was negligent in any of the ways alleged in the plaintiff's complaint, you must next decide if such negligence was a legal cause of any of the plaintiff's claimed injuries.

"Legal cause has two components, cause in fact and proximate cause. A cause in fact is an actual cause. The test for cause in fact is simply would

we need not decide whether the court improperly refused to charge in the specific manner requested by the defendant.

The court's detailed charge provided in relevant part as follows: "When . . . some other cause . . . contributes so powerfully to the production of an injury as to make [the] defendant's negligence contribution to the injury merely trivial or inconsequential, the defendant's negligence must be rejected as a proximate cause of the injury for it has not been a substantial factor in bringing about the injury. To prove that an injury is a

the injury have occurred were it not for the defendant's negligence. If your answer to this question is yes, then the defendant's negligence was not a cause in fact of the plaintiff's injuries.

"Proximate cause means there must be a significant causal connection between the act or omission of a defendant and any injury or damage sustained by the plaintiff. An act or omission is a proximate cause if it was a substantial factor in bringing about or actually causing the injury. If an injury was a direct result of the defendant's act or omission it was proximately caused by such an act or omission. If a defendant's act or omission had such an effect in producing the injury that reasonable persons would regard it as being a cause of the injury, then the act or omission is a proximate cause.

"Under the definition I have given you, negligence can be a proximate cause of the injury if it is not the only cause or even the most significant cause of the injury provided it contributes materially to the production of the injury and thus a substantial factor in bringing it about.

"Therefore, when a defendant's negligence combines with one or more causes to produce an injury, such negligence is a proximate cause of the injury if its contributions to the production of the injury in comparison to all other causes is material or substantial.

"When, however, some other cause . . . contributes so powerfully to the production of an injury as to make [the] defendant's negligence contribution to the injury merely trivial or inconsequential, the defendant's negligence must be rejected as a proximate cause of the injury for it has not been a substantial factor in bringing about the injury. To prove that an injury is a reasonably foreseeable consequence of negligent conduct a plaintiff need not prove that the defendant actually foresaw or should have foreseen the extent of the harm suffered or the manner in which it incurred—occurred rather. Instead, the plaintiff must prove that it is a harm of the same general nature as that which a reasonably prudent person in the defendant's position should have anticipated in view of what the defendant knew or should have known at any time of the negligent conduct."

reasonably foreseeable consequence of negligent conduct a plaintiff need not prove that the defendant actually foresaw or should have foreseen the extent of the harm suffered or the manner in which it incurred—occurred rather. Instead, the plaintiff must prove that it is a harm of the same general nature as that which a reasonably prudent person in the defendant's position should have anticipated in view of what the defendant knew or should have known at any time of the negligent conduct." This charge was legally accurate and adequate to provide the jury with the necessary guidance in deliberating as to the element of causation. See *Stewart* v. *Federated Dept. Stores, Inc.*, supra, 234 Conn. 609–10. When viewed as a whole, the charge adequately conveyed to the jury all of the legal principles necessary for the determination of the issues before it, including proximate cause. The defendant's claim, therefore, must fail.

## B

Next, we address the defendant's claim that the court erred in instructing the jury on the issue of future medical treatment as per the plaintiff's request. The defendant specifically claims that there was no evidence presented that future medical treatment was necessary and foreseeable. The plaintiff claims that the charge on future medical treatment was reasonably supported by the evidence.[13] We agree with the plaintiff.

The following additional facts are necessary for the resolution of this claim. The plaintiff testified that he

[13] The plaintiff also argues that, in any event, the defendant waived the right to challenge the charge on future medical treatment on appeal because no objection to the introduction of that evidence was raised at trial. A review of the transcript, however, reveals that the court did understand the defendant to be making an objection to the charge on future medical treatment. As a result, it is clear that the court effectively was alerted to a claim of potential error while there was still time for the court to act. The defendant, therefore, has properly preserved this claim for appeal. See *Pestey* v. *Cushman*, supra, 259 Conn. 366–67.

was receiving treatment from his chiropractor, Marc D. Peyser, at least once every two months and that he had plans to continue that treatment at the same or greater frequency. A review of the record corroborates the plaintiff's claim that he received regular treatment, first from Richard E. Pinsky, a chiropractor, and then from Peyser. Moreover, although Peyser's assessment did not state whether the plaintiff required future medical treatment, it did indicate that the plaintiff had suffered 5 percent "whole person permanent impairment" due to the assault by the assailant and that the plaintiff experienced periodic exacerbation of his symptoms. Furthermore, Peyser's patient notes, dated less than two months before the date of the plaintiff's testimony, indicated that the plaintiff's neck pain was "worse lately," that his diagnosis was the same and that the plaintiff was to return for further treatment. We therefore conclude that the court's instruction on future medical treatment found reasonable support in the evidence adduced during trial. See *Godwin* v. *Danbury Eye Physicians & Surgeons, P.C.*, supra, 254 Conn. 139.

### III

The defendant's final claim is that the evidence was insufficient to establish that the harm suffered by the plaintiff was within the scope of the risk created by the defendant's conduct. We disagree.[14]

As an initial matter, we note that "[t]he standards governing our review of a sufficiency of evidence claim are well established and rigorous. . . . [I]t is not the function of this court to sit as the seventh juror when we review the sufficiency of the evidence . . . rather, we must determine, in the light most favorable to sustaining the verdict, whether the totality of the evidence, including reasonable inferences therefrom, supports

---

[14] As stated earlier in this opinion, the court denied the defendant's motion for a directed verdict and its motion to set aside the verdict.

the jury's verdict . . . . In making this determination, [t]he evidence must be given the most favorable construction in support of the verdict of which it is reasonably capable. . . . In other words, [i]f the jury could reasonably have reached its conclusion, the verdict must stand, even if this court disagrees with it." (Internal quotation marks omitted.) *Carrano* v. *Yale-New Haven Hospital,* 279 Conn. 622, 656–57, 904 A.2d 149 (2006).

Our Supreme Court has stated that "a negligent defendant, whose conduct creates or increases the risk of a particular harm and is a substantial factor in causing that harm, is not relieved from liability by the intervention of another person, except where the harm is intentionally caused by the third person *and* is not within the scope of the risk created by the defendant's conduct." (Emphasis added.) *Tetro* v. *Stratford,* 189 Conn. 601, 605, 458 A.2d 5 (1983). "[T]o be within the scope of the risk, the harm actually suffered must be of the *same general type* as that which makes the defendant's conduct negligent in the first instance." (Emphasis in original; internal quotation marks omitted.) *Stewart* v. *Federated Dept. Stores, Inc.,* supra, 234 Conn. 609. The question is whether, viewed in the light most favorable to sustaining the verdict, the evidence was sufficient to establish that the harm suffered by the plaintiff was within the scope of risk created by the defendant's failure to mitigate aggressive dancing. Viewed in light of the principles set forth previously, we conclude that the evidence was sufficient in this regard.

Boehmcke, the defendant's general manager, testified that the security staff at the Thirsty Turtle was responsible for identifying and defusing potential situations because those situations can escalate into violence. Boehmcke further testified that a male patron making a female patron feel uncomfortable is a potential situation that can escalate into violence—an opinion that was

echoed substantially by DePalma. In addition, the plaintiff presented evidence that at least one of the female patrons had complained to the bartender concerning the activities of the male patrons at the Thirsty Turtle on the night in question. Given this evidence, the jury reasonably and legally could have concluded that the harm suffered by the plaintiff was within the scope of the risk created by the defendant's conduct.[15]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[15] We also note that the trial court, in ruling on the defendant's motion for a directed verdict, indicated that "[t]he dancing as described met a 'threatening' appearance."