******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ALZIRA GOIS *v.* JONATHAN ASARO
(AC 35285)

DiPentima, C. J., and Sheldon and Bishop, Js.

*Argued January 23—officially released May 27, 2014*

(Appeal from Superior Court, judicial district of
Stamford-Norwalk, Povodater, J.)

*Brock T. Dubin*, with whom, on the brief, was *Matthew H. Geelan*, for the appellant (defendant).

*Tanya M. Bachand*, for the appellee (plaintiff).

*Opinion*

BISHOP, J. The defendant, Jonathan Asaro, appeals from the judgment of the trial court rendered after a jury verdict in favor of the plaintiff, Alzira Gois. On appeal, the defendant claims that the court erroneously: (1) failed to preclude evidence at trial concerning post-traumatic stress disorder (PTSD) as well as references to a traumatic brain injury (TBI) in the plaintiff's medical records; and (2) denied the defendant's motion for remittitur.[1] We affirm the judgment of the trial court.

The following facts, which the jury reasonably could have found, and procedural history are relevant to our resolution of the defendant's appeal. This personal injury case arose out of a motor vehicle accident which occurred on the afternoon of June 11, 2007, on Interstate 95 in Darien. While the plaintiff was driving in the right northbound lane in her Hyundai, a tractor trailer truck owned by the defendant collided with the plaintiff's vehicle when the defendant attempted to merge into the right lane. The force of the impact caused the plaintiff's vehicle to crash into the right shoulder barrier and flip over into a construction zone. The plaintiff first received medical attention at the scene of the accident, and then was transported to Stamford Hospital for further treatment and evaluation. At the hospital, the plaintiff complained of left-sided chest pain, left-sided abdominal pain, and a headache. Tests performed at the hospital revealed the presence of fluid surrounding her aorta, as well as multiple rib fractures and abrasions to her eye, wrist, and flank. The plaintiff was discharged on June 12, 2007, and thereafter followed up with Dr. Philip Corvo, a general surgeon, on June 18, and again on August 16, 2007, when Corvo referred her to a neurologist for additional evaluation. The plaintiff continued to see several specialists for further treatment for an extended period of time. During her time of treatment, the plaintiff complained of insomnia, numbness in her limbs, a "crawling" and tingling sensation on her head, back and shoulder pain, and headaches. After the accident, the plaintiff could not return to work as a private, full-time nanny but, instead, began doing light cleaning for her roommate's cleaning company in exchange for rent.

On March 30, 2010, the plaintiff filed her amended complaint in which she claimed that she suffered from, inter alia, a 5 percent whole person impairment, concussion, post-concussion syndrome, headaches, PTSD, severe anxiety, and memory loss as a result of her collision with the defendant. The defendant filed his operative answer on July 18, 2011, in which he generally denied the plaintiff's allegations but admitted that "he failed to keep a proper lookout for other vehicles and moving traffic lawfully traveling on [the] highway." Because the defendant admitted liability for the collision, the trial was limited to the issues of causation

and damages.

The jury heard evidence over several days in September, 2012, and, on October 2, 2012, it returned a verdict in favor of the plaintiff in the amount of $82,959.89 in economic damages and $288,000 in noneconomic damages[2] for a total award of $370,959.89. On October 9, 2012, the defendant filed a motion for remittitur and, on October 10, 2012, the defendant also moved to set aside the verdict. On December 6, 2012, the court denied both motions and, thereafter, rendered judgment in favor of the plaintiff. This appeal followed. Additional facts will be set forth as necessary.

I

EVIDENTIARY CLAIMS

The defendant first claims that the court erred by admitting evidence at trial concerning: (A) PTSD; and (B) TBI.

We begin by setting forth the applicable standard of review concerning a trial court's evidentiary rulings. "It is a well established principle of law that the trial court may exercise its discretion with regard to evidentiary rulings, and the trial court's rulings will not be disturbed on appellate review absent abuse of that discretion. . . . Sound discretion, by definition, means a discretion that is not exercised arbitrarily or wilfully, but with regard to what is right and equitable under the circumstances and the law . . . . And [it] requires a knowledge and understanding of the material circumstances surrounding the matter . . . . In our review of these discretionary determinations, we make every reasonable presumption in favor of upholding the trial court's ruling. . . . [Our Supreme Court has] often stated that before a party is entitled to a new trial because of an erroneous evidentiary ruling, he or she has the burden of demonstrating that the error was harmful. . . . When determining that issue in a civil case, the standard to be used is whether the erroneous ruling would likely affect the result." (Citation omitted; internal quotation marks omitted.) *Washington* v. *Christie*, 58 Conn. App. 96, 99–100, 752 A.2d 1127, cert. denied, 254 Conn. 906, 755 A.2d 884 (2000).

A

The defendant's first claim involves several references to PTSD made by neurologists Dr. Daryl Story and Dr. Louis Cuzzone in the plaintiff's medical records as well as in Story's deposition. The medical records and the Story deposition were admitted into evidence at trial. Specifically, the defendant claims that neither Story nor Cuzzone was qualified to offer an opinion concerning PTSD because they are neurologists and not psychiatrists and therefore, any opinion by either of them that the plaintiff suffered from PTSD should not have been allowed in evidence. In support of his argument, the defendant points to Story's deposition

testimony that because he and Cuzzone were neurologists, neither of them could properly diagnose the plaintiff as suffering from PTSD. The defendant also argues that, as a result, it was not established with reasonable medical probability that the plaintiff actually suffered from PTSD, and, accordingly, any reference to PTSD by either Story or Cuzzone should have been precluded. We are not persuaded.

The following additional facts are relevant to the resolution of this claim. After the collision, the plaintiff began treatment with Cuzzone in September, 2007, at Neurology Associates of Norwalk. In the plaintiff's medical records admitted at trial, there is a report of Cuzzone's visit with the plaintiff, in which Cuzzone noted: "It is my feeling that she is suffering from [PTSD] and that many of her physical symptoms are related to the effects of these panic episodes on her body. She has some insight into this and I told her that referral back to her psychiatrist might be helpful in the short term to manage these symptoms." The plaintiff also was treated by Story at the same office in November and December, 2007. Story's report of his visits with the plaintiff notes: "I agree with Dr. Cuzzone's consideration of [PTSD]. She is seeing a psychiatrist and is taking Xanax." In her disclosure of expert witnesses pursuant to Practice Book § 13-4,[3] the plaintiff listed, among others, physicians from Neurology Associates of Norwalk to testify regarding her injuries including, but not limited to, PTSD. On September 10, 2012, the defendant filed a motion in limine to preclude the plaintiff from introducing into evidence medical records and deposition testimony from Cuzzone and Story that made reference to PTSD. The court denied the defendant's motion on September 14, 2012. At trial, Story's deposition was read into evidence. In his deposition, Story was questioned on notes in his medical records indicating that the plaintiff was suffering from PTSD. Specifically, Story stated that he did not consider himself adequately trained to make such a diagnosis. When questioned about Cuzzone's notes on PTSD in the plaintiff's medical records, Story stated that: "Looking at what [Cuzzone] wrote precisely I don't think that he would have intended to make a formal diagnosis of [PTSD] because we don't make that diagnosis as neurologists. . . . I believe we can suspect it and I think that's what he was writing in the note but would not have— would not have made a formal diagnosis on his own."

On May 15, 2013, the court issued an articulation in response to the defendant's motion for articulation regarding the denial of the defendant's motions in limine. The court stated that: "Again, there are two aspects to the ruling. First, regardless of specialty, defendant never presented a basis for the court to conclude that a doctor, even acting outside his/her specialty, presumptively was not a sufficient expert to diagnose PTSD. (The doctor was a neurologist, such

that his specialty was not as remote as it might be with a dermatologist.) Secondly, defendant did not present any authority for what the court considered to be a novel proposition, to the effect that the opinion of [Story] that an area was outside of the specialty and expertise of [Cuzzone] was a valid basis on which the court could conclude that the opinion of [Cuzzone] should be precluded."

Our analysis of the defendant's claim regarding the admission of PTSD evidence is guided by certain governing principles. First, a "trial court has wide discretion in ruling on the qualification of expert witnesses and the admissibility of their opinions. . . . The court's decision is not to be disturbed unless [its] discretion has been abused, or the error is clear and involves a misconception of the law." (Internal quotation marks omitted.) *State* v. *Robles*, 103 Conn. App. 383, 401, 930 A.2d 27, cert. denied, 284 Conn. 928, 934 A.2d 244 (2007).

With respect to medical experts, specifically, we have also held that: "For medical testimony to have any probative value, it must at least advise the jury that the inference drawn by the doctor is more probably correct than incorrect." (Internal quotation marks omitted.) *Vickers* v. *Jessup*, 32 Conn. App. 360, 363, 629 A.2d 457, cert. granted, 227 Conn. 922, 632 A.2d 701 (1993) (appeal withdrawn March 18, 1994). "If the *probabilities are in balance*, the matter is left to *speculation*." (Emphasis in original; internal quotation marks omitted.) *Healy* v. *White*, 173 Conn. 438, 444, 378 A.2d 540 (1977). Notably, "[t]he term reasonable medical certainty is another name for the reasonable medical probability standard. We have stated that: Expert opinions must be based upon reasonable probabilities rather than mere speculation or conjecture if they are to be admissible in establishing causation. . . . To be reasonably probable, a conclusion must be more likely than not. . . . Whether an expert's testimony is expressed in terms of a reasonable probability that an event has occurred does not depend upon the semantics of the expert or his use of any particular term or phrase, but rather, is determined by looking at the entire substance of the expert's testimony. . . . We do not require that certain magic words be used, and therefore, [w]e reject the proposition that certain formulaic words are essential when an expert renders an opinion. . . . As long as it is clear that the opinion of the expert is expressed in terms of probabilities, the opinion should be submitted into evidence for a jury's consideration. . . . [A]n expert witness is competent to express an opinion, even though he or she may be unwilling to state a conclusion with absolute certainty, so long as the expert's opinion, if not stated in terms of the certain, is at least stated in terms of the probable, and not merely the possible." (Citations omitted; internal quotation marks omitted.) *State* v. *Nunes*, 260 Conn. 649, 672–73, 800 A.2d 1160 (2002).

Finally, as to expert testimony generally, "if a proponent of testimony establishes reasonable expert qualifications for a witness, further objections to that expert's testimony go to its weight, not its admissibility." (Internal quotation marks omitted.) *Chebro* v. *Audette*, 138 Conn. App. 278, 288, 50 A.3d 978 (2012).

With these guidelines in mind, we turn to the defendant's claims. The defendant claims that because Story and Cuzzone were neurologists, they were not qualified to give their opinions as to PTSD, and thus that the court erred in admitting their testimony on this subject. Additionally, the defendant claims that since neither expressed an opinion to a reasonable degree of medical probability, any opinion expressed by either physician should have been excluded. The defendant highlights the fact that in his deposition testimony, Story stated that he did not consider himself qualified to make such a diagnosis and that generally, neurologists do not make such diagnoses. As we have previously noted, a trial court has wide discretion to determine the admissibility of expert evidence, which we will not disturb on appeal absent evidence of abuse of such discretion. Story's contention that, as a neurologist, he was not qualified to diagnose PTSD does not automatically preclude his testimony or the admission of medical records in which Cuzzone stated his belief that the plaintiff had PTSD. See *Wood* v. *Club, LLC*, 134 Conn. App. 768, 773–76, 41 A.3d 684 (2012) (court allowed witness to testify as expert even though witness claimed he was not expert because court determined he satisfied criteria for testifying as expert), appeal dismissed, 310 Conn. 373, 77 A.3d 747 (2013). The fact that both Story and Cuzzone are neurologists and not mental health specialists does not, in and of itself, demonstrate that the court abused its discretion in admitting their testimony regarding PTSD. In response to the defendant's second motion for articulation, the court stated that: "Other than in the context of medical malpractice where there is a statutory requirement that an expert witness be a 'similar health care provider'; General Statutes § 52-184c (d); the court is unaware of any proscription against a generalist (e.g. family doctor or internist), or a dissimilar specialist, giving an expert opinion concerning a condition that falls within the ambit of some other specialty—the doctor is nonetheless likely to possess knowledge beyond the ken of the average juror that would be of assistance in the fact-finding function." We agree with the court.

"Expert testimony should be admitted when . . . the testimony would be helpful to the . . . jury in considering the issues." (Internal quotation marks omitted.) *Marchell* v. *Whelchel*, 66 Conn. App. 574, 585, 785 A.2d 253 (2001). Story's and Cuzzone's testimony as licensed physicians concerning the plaintiff's likely PTSD was helpful to the jury in considering the issues and the weight to be accorded to their testimony. Moreover,

the lack of a formal diagnosis by either of them was for the jury to determine. Based on the entirety of Story's deposition testimony and the plaintiff's treatment with both Story and Cuzzone, as noted in the plaintiff's medical records, it is clear that it was their shared professional opinion that the symptoms experienced by the plaintiff were consistent with PTSD, and thus, that she likely suffered from that disorder. On the basis of the foregoing, the admission of evidence from the two physicians regarding PTSD was not an abuse of discretion.

B

The defendant's second evidentiary claim concerns the court's admission of neurosurgeon Dr. Roger Kaye's medical report, which referenced a TBI. Specifically, the defendant argues that because the plaintiff never claimed that she had a TBI, evidence of such an injury was not relevant and may have confused the jury because they "may not have properly appreciated that TBI was not a claimed injury." The defendant also asserts that because it was not established with reasonable medical probability that the plaintiff suffered from a TBI, any reference to such an injury should have been redacted from Kaye's records and not made available to the jury.

The following additional facts are relevant to the resolution of this claim. On September 10, 2012, the defendant filed a motion in limine to redact any references to a TBI from Kaye's medical report concerning his treatment of the plaintiff. Specifically, Kaye's unredacted report included notes from the plaintiff's August 31, 2007 visit, which stated that: "It is clear that [the plaintiff] has a traumatic injury to the greater occipital nerve. This is a partial injury and I would expect gradual improvement over the coming months. . . . It is not clear whether she has a TBI or not." After the plaintiff's second visit with Kaye on November 11, 2009, Kaye noted in the plaintiff's record that there was a "resolving TBI." The defendant argued that because Kaye, who had been disclosed as an expert witness on behalf of the plaintiff, formally had not diagnosed the plaintiff as having suffered a TBI, any such reference should be redacted to avoid confusing the jury. After arguments, the court denied the defendant's motion in limine on September 17, 2012. At trial, Kaye was not called to testify, but the plaintiff offered his medical report into evidence pursuant to General Statutes § 52-174 (b).[4] Notwithstanding reference to a TBI in her medical records, plaintiff's counsel confirmed several times that she was not claiming or requesting damages for a TBI.

On March 19, 2013, several months after the verdict, the defendant filed a motion seeking articulation as to the reasons for the court's denial of the defendant's motion in limine to redact any references to TBI in Kaye's reports. In its articulation, the court stated that it denied the defendant's motion regarding TBI for two

reasons. First, Kaye's reference to a TBI was not a diagnosis or medical opinion that the plaintiff had such a condition but, rather, was simply a note identifying a condition that she *might* have had. Second, the court pointed out that the Centers for Disease Control and Prevention website indicated that the term TBI is an umbrella term, which encompasses concussions. Because the plaintiff was claiming a concussion as well as post-concussion syndrome, and because the defendant did not argue that there was no evidence of a concussion, the defendant's objection to Kaye's reference to TBI was nothing more than "a nomenclature issue—analogous to someone with leukemia also referring to the condition as cancer." With this procedural background in place, we turn to the legal principles relevant to this claim.

"The law defining the relevance of evidence is well settled. Relevant evidence is evidence that has a logical tendency to aid the trier in the determination of an issue. . . . The trial court has wide discretion to determine the relevancy of evidence . . . . Every reasonable presumption should be made in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion." (Internal quotation marks omitted.) *Hayes* v. *Camel*, 283 Conn. 475, 483, 927 A.2d 880 (2007). However, "[e]ven when a trial court's evidentiary ruling is deemed to be improper, we must determine whether that ruling was so harmful as to require a new trial. . . . In other words, an evidentiary ruling will result in a new trial only if the ruling was both wrong and harmful. . . . Finally, the standard in a civil case for determining whether an improper ruling was harmful is whether the . . . ruling [likely] would [have] affect[ed] the result." (Internal quotation marks omitted.) *Daley* v. *McClintock*, 267 Conn. 399, 403, 838 A.2d 972 (2004).

At the outset, we do not conclude that the court abused its discretion in admitting this evidence. Although the plaintiff did not claim that she suffered from a TBI, Kaye's description of her injury—what it was and what it probably was not—was relevant, even if marginally, to gaining a complete understanding of her claims of impairment. Furthermore, Kaye did not diagnose the plaintiff as suffering from a TBI but, importantly, stated that it was not clear whether she had such an injury. Instead, Kaye's notes concerning TBI merely demonstrated that such an injury was part of his thought process in attempting to determine the plaintiff's injuries.

We also conclude that even if the court erroneously allowed the reference to TBI in Kaye's reports into evidence, the defendant has not shown that he suffered any resulting harm. First, the reference to a TBI in Kaye's records was for the purpose of ruling out such an injury as a potential diagnosis. Also, the plaintiff did

not claim that she suffered from a TBI in her complaint or at any point during the course of trial. As noted, the plaintiff confirmed several times, on the record, that she was not claiming or seeking damages for a TBI. Accordingly, the defendant's argument that the reference to a TBI in Kaye's records may have influenced the jury is unavailing. Because the defendant has failed to demonstrate that he suffered any harm by the reference to TBI at trial, his second claim must also fail.

## II

## REMITTITUR

The defendant next claims that the court erroneously denied his motion for remittitur. Specifically, the defendant argues that the plaintiff's award of $263,000 for past noneconomic damages was not supported by the evidence. We disagree with the defendant.

The following facts are relevant to the defendant's final claim. The defendant filed a motion for remittitur on October 9, 2012. In his supporting memorandum of law, the defendant argued that: "Unfortunately, since the jury was permitted to consider records speculating that plaintiff suffered from [PTSD] . . . and [TBI] . . . despite motions in limine requesting the preclusion of said records, the verdict is largely inflated due to the inappropriate and inadmissible speculation of plaintiff's physicians and not based upon relevant evidence." The court denied the defendant's motion on December 6, 2012. On January 31, 2013, the defendant filed a motion for articulation, in which he requested that the court set forth, inter alia, its reasoning for the denial of his motion for remittitur. In its articulation, the court highlighted how "remarkably conscientious, attentive and detail-oriented" the jury was in this case. The court continued that "the jury *could have* accepted defendant's characterization of plaintiff's injuries as minor and limited in duration (with primary focus on physical injuries and less emphasis on psychological and mental consequences of the accident), which likely would have resulted in a significantly smaller verdict; but the jury was not compelled to adopt such a view of the evidence." (Emphasis in original.)

Our analysis of the defendant's claim is guided by certain governing principles. "First, the amount of an award [of damages] is a matter peculiarly within the province of the trier of facts. . . . Second, the court should not interfere with the jury's determination except when the verdict is plainly excessive or exorbitant. . . . The ultimate test which must be applied to the verdict by the trial court is whether the jury's award falls somewhere within the necessarily uncertain limits of just damages or whether the size of the verdict so shocks the sense of justice as to compel the conclusion that the jury [was] influenced by partiality, prejudice, mistake or corruption. . . . Third, the ruling of the trial

court on the motion to set aside the verdict as excessive is entitled to great weight and every reasonable presumption should be given in favor of its correctness. . . . The court's broad power to order a remittitur should be exercised only when it is manifest that the jury [has] included items of damage which are contrary to law, not supported by proof, or contrary to the court's explicit and unchallenged instructions. . . . The relevant inquiry is whether the verdict falls within the necessarily uncertain limits of fair and reasonable compensation or whether it so shocks the conscience as to compel the conclusion that it was due to partiality, prejudice or mistake. . . . Furthermore, [t]he decision whether to reduce a jury verdict because it is excessive as a matter of law [within the meaning of General Statutes § 52-216a] rests solely within the discretion of the trial court. . . . [Consequently], the proper standard of review of a trial court's decision to grant or deny a motion to set aside a verdict as excessive as a matter of law is that of an abuse of discretion. . . .

"[A]lthough the trial court has a broad legal discretion in this area, it is not without its limits. . . . Litigants have a constitutional right to have factual issues resolved by the jury. . . . This right embraces the determination of damages when there is room for a reasonable difference of opinion among fair-minded persons as to the amount that should be awarded. . . . The award of damages for pain and suffering is peculiarly within the province of the trier [of fact]. . . . The fact that it is difficult to measure pain and suffering in terms of money does not prevent a recovery . . . as long as there is a reasonable basis in the record for that recovery. . . . Furthermore, [t]he size of the verdict alone does not determine whether it is excessive. . . .

"Thus, [i]n ruling on the motion for remittitur, the trial court was obliged to view the evidence in the light most favorable to the plaintiff in determining whether the verdict returned was reasonably supported thereby. . . . A conclusion that the jury exercised merely poor judgment is an insufficient basis for ordering a remittitur. . . . Proper compensation for noneconomic damages cannot be computed by a mathematical formula, and there is no precise rule for the assessment of damages. . . . The plaintiff need not prove damages with mathematical exactitude; rather, the plaintiff must provide sufficient evidence for the trier to make a fair and reasonable estimate. . . . A generous award of noneconomic damages should be sustained if it does not shock the sense of justice. . . .

"The fact that the jury returns a verdict in excess of what the trial judge would have awarded does not alone establish that the verdict was excessive. . . . [T]he court should not act as the seventh juror with absolute veto power. Whether the court would have reached a

different [result] is not in itself decisive. . . . The court's proper function is to determine whether the evidence, reviewed in a light most favorable to the prevailing party, reasonably supports the jury's verdict. . . . In determining whether the court abused its discretion, therefore, we must examine the evidential basis of the verdict itself . . . . [T]he court's action cannot be reviewed in a vacuum. The evidential underpinnings of the verdict itself must be examined." (Citations omitted; internal quotation marks omitted.) *Saleh* v. *Ribeiro Trucking, LLC,* 117 Conn. App. 821, 825–28, 982 A.2d 178 (2009), aff'd, 303 Conn. 276, 32 A.3d 318 (2011).

Based upon our review of the record, there was ample evidence concerning the operative facts of the collision and the plaintiff's resulting injuries to warrant the jury's verdict of $263,000. The verdict was not excessive; it does not shock the sense of justice. Accordingly, the defendant's remittitur claim must also fail.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The defendant also claims, in his statement of issues, that the court erroneously denied his motion to set aside the verdict, but does not address this argument in his brief. We therefore treat this claim, to the extent it may be distinguished from the briefed claims, as abandoned. See *Nowacki* v. *Nowacki,* 129 Conn. App. 157, 163–64, 20 A.3d 702 (2011).

[2] The jury awarded $263,000 for past noneconomic damages and $25,000 for future noneconomic damages.

[3] Practice Book § 13-4 (a) provides in relevant part: "A party shall disclose each person who may be called by that party to testify as an expert witness at trial, and all documents that may be offered in evidence in lieu of such expert testimony, in accordance with this section. . . ."

[4] General Statutes § 52-174 (b) provides in relevant part: "In all actions for the recovery of damages for personal injuries or death, pending on October 1, 1977, or brought thereafter . . . any party offering in evidence a signed report and bill for treatment of any treating physician or physician assistant licensed under chapter 370 . . . may have the report and bill admitted into evidence as a business entry and it shall be presumed that the signature on the report is that of such treating physician . . . and that the report and bill were made in the ordinary course of business. The use of any such report or bill in lieu of the testimony of such treating physician . . . shall not give rise to any adverse inference concerning the testimony or lack of testimony of such treating physician . . . . In any action to which this subsection applies, the total amount of any bill generated by such physician . . . shall be admissible in evidence on the issue of the cost of reasonable and necessary medical care. . . ."